**Reversed and Rendered and Opinion filed March 6, 2012.**



In The

# Fourteenth Court of Appeals

---

NO. 14-10-01222-CR
NO. 14-11-00006-CR
NO. 14-11-00007-CR

---

**BILLY JOE WYATT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 12th District Court
Grimes County, Texas
Trial Court Cause No. 16,602**

---

## O P I N I O N

Appellant Billy Joe Wyatt was convicted of three counts of aggravated robbery. The trial court sentenced appellant to twenty-two years' confinement for each count and ordered the sentences to run concurrently. Appellant urges on appeal that the evidence was insufficient to support his conviction based on a theory of party liability, in part, because the record contains no evidence showing that appellant knew or should have known a firearm would be used. We reverse appellant's conviction on all three counts and render a judgment of acquittal.

BACKGROUND

La Nell Szymczak, an Assistant Vice President of the First National Bank of Anderson, left work on her lunch break at approximately 1:00 p.m. on August 24, 2009, to travel west on Highway 90 toward Navasota, Texas. As she approached Navasota, she noticed a white, four-door "98 Olds" parked within "pretty close proximity" to "a black gentleman with a vest on walking kind of back and forth in that ditch area" near the Citizens State Bank along Highway 90. She testified: "I thought, well, maybe he's picking up trash. It just caught my eye because usually if you're picking up trash[,] there's more than one person that's usually on the highway doing that." A video taken from the security camera of Citizens State Bank showed a man in a yellow-green vest walking back and forth along Highway 90 between 1:10 and 1:20 p.m. just before a white, four-door vehicle passed by. Szymczak did not see the man along Highway 90 when she traveled back to the First National Bank of Anderson around 2:00 p.m.[1]

In Anderson, video clips taken from the security cameras at Clint's Supermarket, a gas station near the First National Bank of Anderson, showed a white, four-door Oldsmobile following a black Ford Expedition SUV into the gas station at 2:33 p.m. Appellant exited the white, four-door Oldsmobile, entered the store, and bought two large canned drinks. Appellant returned to the vehicles, disappeared alongside the driver's side of the black Ford Expedition SUV for a moment, and then pumped gas into the white, four-door Oldsmobile before getting back inside. The white, four-door Oldsmobile followed the black Ford Expedition SUV out of the gas station at 2:39 p.m. The vehicles drove east on Farm-To-Market Road 1774, which connects with Highway 90 to continue east where Highway 90 veers north in Anderson.

Timmus Fagan testified that some time after lunch, he had just passed Clint's Supermarket and the First National Bank of Anderson traveling east on Farm-To-Market Road 1774 when he noticed a "junkie dude" about a hundred feet east of the bank

---

[1] A landscape company was working in front of Citizens State Bank for a few hours that day beginning around lunchtime to repair a cistern.

wearing dirty-looking, long-sleeved clothes, a hat, and "either a scarf or something wrapped around him or something. I just seen green or whatever he had on . . . . It was like a jacket or — it was just some, a big jacket or something like that." The man "threw his hand" at Fagan to wave and continued walking west toward the bank. Then, Fagan passed a black male behind the wheel of a white vehicle "like a Cadillac" or "some type of General Motors car" that was backing out of a residential driveway on or near Farm-To-Market Road 1774. Fagan continued driving and did not see which direction the white vehicle went.[2]

Surveillance tapes from the First National Bank of Anderson showed a black male walking into the bank at 2:51 p.m. wearing a yellow-green reflector vest over a dark-colored, long-sleeved shirt and carrying a black trash bag. The man approached the teller counter, brandished a gun, and took money from bank tellers Dawn Polansky Wilson, Rachel Wells, and Shellie Coronado. He exited the bank with the bag.[3]

Two of the tellers included "bait money"—cash bills with pre-recorded serial numbers—in the money they handed to the robber. The robber dropped approximately half of the stolen money in the parking lot outside the bank, but absconded with a total of $8,086, including one set of bait money.

Kathy Burzynski testified that she was traveling east on Farm-To-Market Road 1774 when she noticed "a guy standing on the corner behind the bank, and he had on a shiny vest like the highway department wears." She testified: "And I said, hum, where is everybody else and I looked around and there wasn't nobody there but him." She stated that the man's vest was "kind of greenish-looking, orange-looking vest that — you know, real bright" and that he had a black trash bag tucked into the back of his pants. Just moments later, her husband called to alert her that the bank had just been robbed, and she decided to "take a left and go check it out." She passed a white, four-door car driven by a

---

[2] The record is unclear as to whether Fagan's observations took place just before or after the robbery committed at approximately 2:51 p.m.

[3] It is undisputed that appellant is not the man seen robbing the bank.

3

black male headed toward Farm-To-Market Road 1774. She thereafter continued on her way home.

Terry Licce, a loan officer and security officer for the First National Bank of Anderson, was taking a scheduled day off at a friend's residence off of Farm-To-Market Road 2819, which connects with Farm-To-Market Road 1774 to continue east where Farm-To-Market Road 1774 turns south just east of Anderson. Sometime after 1:30 p.m., Licce noticed that a black SUV was parked on the dirt road between her friend's residence and Farm-To-Market Road 2819. Licce could not tell whether the black SUV was occupied. Some time later, a white, four-door Oldsmobile pulled up to the black Ford SUV for a short period of time, driver's side to driver's side. Licce could not see what took place between the two vehicles. Then, the white, four-door Oldsmobile turned around and pulled onto Farm-To-Market Road 2819 heading east toward Richards, Texas, and the black Ford SUV followed. Licce testified that a black male was driving the white, four-door Oldsmobile, and she noticed a "yellowy-greenish" piece of fabric hanging out of the rear driver's side door. "Just a matter of minutes" after the vehicles departed, she was notified by an acquaintance who had been listening to a police scanner that the bank had just been robbed. When she arrived at the bank and reviewed the surveillance tapes, she discovered that the fabric she had seen hanging out of the white, four-door Oldsmobile matched the vest worn by the robber.

Approximately an hour and a half after the robbery, appellant was stopped by police while driving a white, four-door Oldsmobile northeast of Richards in Huntsville, Texas. Appellant was carrying $4,086 in cash on his person—including the missing set of bait money. He voluntarily accompanied police to the Huntsville Police Department, where he was interviewed by police. Appellant initially told police that he received the cash from an acquaintance to whom appellant had sold a vehicle. After the acquaintance denied appellant's version of the facts, appellant recanted his story and instead told police that he received the money from a man named Christopher Tolbert in exchange for thirty

4

pounds of marijuana.[4] Appellant directed police to Tolbert's residence alongside Highway 90 between Anderson and Navasota, which is a few hundred yards away from where Szymczak saw a man in a vest walking back and forth near a parked "98 Olds." A black Ford Expedition SUV was parked in the driveway. Tolbert subsequently was identified as the man in the yellow-green reflector vest who had robbed the First National Bank of Anderson. Tolbert was convicted of three separate counts of aggravated robbery pertaining to each of the three tellers, and sentenced to confinement for sixty years.

Appellant also was indicted for three counts of aggravated robbery. The State argued at trial that appellant was guilty based on a theory of party liability. The jury found appellant guilty of all three counts. The jury assessed a punishment of confinement for twenty-two years for each count, and the trial court ordered the sentences to run concurrently. Appellant argues in two issues on appeal that the evidence was insufficient (1) to support his conviction based on a theory of party liability generally; or (2) to show that a firearm was used by the principal actor in committing the crime, or that appellant knew or should have known that a firearm would be used.

## ANALYSIS

Appellant argues in his second issue on appeal that the record contains no evidence that he was guilty based on party liability for the aggravating element of the offense. Because this issue is dispositive of his appeal, we address it first.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Palomo v. State*, 352 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010), and *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

---

[4] Bryan Dismukes of the Texas Department of Public Safety Narcotics Service testified that thirty pounds of marijuana in the Houston area probably would cost between approximately $11,250 or $15,000 for low-quality marijuana and $120,000 for high-quality marijuana. He also testified that the prices would be higher around Anderson than in the Houston area.

The jury is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence. *Id.* (citing *Isassi*, 330 S.W.3d at 638). Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Id.* We draw all reasonable inferences from the evidence in favor of the verdict. *Id.* This standard applies to both circumstantial and direct evidence. *Id.*

A person commits robbery if, "in the course of committing theft . . . and with intent to obtain or maintain control of the property," he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011). A person commits aggravated robbery if he commits robbery and "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2) (West 2011). A firearm, which was alleged to have been used in the indictment, is a deadly weapon *per se*. *Id.* § 1.07 (a)(17)(A) (West 2011).

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a) (West 2011). A person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011).

A conviction for an aggravated offense must be supported by evidence that the defendant committed, or was criminally responsible for committing, the aggravating element. *See Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986). In *Stephens*, a woman was abducted, taken to the bedroom of an apartment, threatened with physical harm, and raped. *Id.* at 338. Although there was evidence that the appellant rented the apartment where the rape occurred, was present in the apartment when the complainant was raped, and had sex with the complainant after she had been in the apartment for a while, there was no evidence that the appellant was in the room when the complainant was actually threatened, or that he even knew such a threat had been made. *Id.* at 339–40. The jury was charged only on the offense of aggravated rape, and the

6

aggravating element was a threat of serious bodily injury or death. *Id*. The Court of Criminal Appeals upheld the reversal of appellant's conviction, which had been based on a theory of party liability, because there was no evidence that he was aware that the complainant had been threatened. *Id*. at 341–42.

With respect to party liability for the use or exhibition of a deadly weapon as an element of aggravated robbery, this court previously has interpreted *Stephens* "to mean that there must be direct or circumstantial evidence that appellant not only participated in the robbery before, while, or after a [deadly weapon] was displayed, but did so while being aware that the [deadly weapon] would be, was being, or had been, used or exhibited during the offense." *Anderson v. State*, No. 14-00-00810-CR, 2001 WL 1426676, at *1 (Tex. App.—Houston [14th Dist.] Nov. 15, 2001, pet. ref'd) (not designated for publication); *accord Kanneh v. State*, No. 14-00-00031-CR, 2001 WL 931629, at *2 (Tex. App.—Houston [14th Dist.] Aug. 16, 2001, pet. ref'd) (not designated for publication). Otherwise, "the evidence necessary to convict him as a party to aggravated robbery would be no different than that to convict him as a party to (ordinary) robbery, *i.e.,* mere participation in the robbery." *Kanneh*, 2001 WL 931629, at *2 n.5. We adopt that same interpretation again today.

We agree with appellant that even if the jury believed that appellant participated in the robbery by serving as Tolbert's getaway driver and sharing in the proceeds of the robbery, the record contains no evidence that appellant ever was aware that the firearm "would be, was being, or had been used or exhibited during the offense." The State presented no evidence that Tolbert exhibited or otherwise made appellant aware of the firearm at any time before or after Tolbert brandished the weapon while acting alone inside the bank. Numerous courts have concluded that the lack of such evidence prevents the State from proving that the appellant was criminally responsible for the aggravating element, and therefore will not support a conviction for aggravated robbery based on a theory of party liability. *See, e.g.*, *Rodriguez v. State*, 129 S.W.3d 551, 563–64 (Tex. App.—Houston [1st Dist.] 2003, pet ref'd) (op. on reh'g) (reversing judgment of

7

conviction for aggravated robbery based on theory of party liability and rendering judgment of acquittal because record contained no evidence that appellant saw, could have seen, or otherwise knew about deadly weapon used by primary actor during robbery while appellant waited in getaway van outside); *Wooden v. State*, 101 S.W.3d 542, 547–48 (Tex. App.—Fort Worth 2003, pet. ref'd) (reversing judgment of conviction for aggravated robbery based on theory of party liability and rendering judgment of acquittal because record contained no evidence that appellant knew passenger in backseat behind appellant had a firearm or that appellant aided or encouraged passenger to threaten victim next to the vehicle with firearm); *see also Gray v. State*, No. 02-08-164-CR, 2009 WL 1905322, at *4–5 (Tex. App.—Fort Worth July 2, 2009, pet ref'd) (mem. op., not designated for publication) (sustaining appellant's issue challenging felony murder conviction based on theory of party liability for underlying aggravated robbery charge, despite fact that appellant showed his father's guns to primary actor before agreeing to rob two individuals by beating them, because appellant did not see primary actor with appellant's father's gun until after the primary actor shot the individuals while appellant was downstairs; sustaining felony murder conviction based on lesser-included offense of robbery as underlying felony); *Kanneh*, 2001 WL 931629, at *2–3 (sustaining appellant's issue challenging conviction for aggravated robbery based on theory of party liability because "there is no direct or circumstantial evidence suggesting that appellant was ever aware of the knife and the evidence is, at best, ambiguous whether it was ever even visible to him" during joint-commission of robbery; reforming judgment to reflect lesser-included offense of robbery because appellant requested instruction on such lesser-included offense); *Nigo v. State*, No. 05-95-01205-CR, 1997 WL 457471, at *5–6 (Tex. App.—Dallas Aug. 11, 1997, no pet.) (not designated for publication) (erroneous judgment for capital murder could not be reformed to reflect lesser-included offense of aggravated robbery based on theory of party liability because record contained no evidence that appellant knew primary actor carried weapon to rob house while appellant stood outside; judgment could be reformed to reflect conviction for lesser-included offense of robbery based on theory of party liability); *cf. Torres v. State*, 233 S.W.3d 26,

8

30–31 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (reforming judgment to delete deadly weapon finding related to offense of possession with intent to deliver based on theory of party liability; appellant never mentioned weapons, did not own apartment in which weapons were discovered, and never was in proximity of weapons or ammunition).

The State relies on three cases to argue that evidence showing a defendant merely served as a getaway driver is sufficient to support an aggravated robbery conviction without evidence that the getaway driver knew that a deadly weapon would be, was being, or had been used or exhibited during the offense: *Johnson v. State*, 6 S.W.3d 709 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd), *Webber v. State*, 757 S.W.2d 51 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd), and *Thompson v. State*, 697 S.W.2d 413 (Tex. Crim. App. 1985), *superseded by statute on other grounds as stated in Cook v. State*, 902 S.W.2d 471, 476 (Tex. Crim. App. 1995).

The First Court of Appeals upheld an aggravated robbery conviction in *Johnson* based on evidence that the getaway driver attempted to outrun an officer while transporting a passenger who had "a gun strapped to his chest that matched the description of the firearm used in the robberies." *See Johnson*, 6 S.W.3d at 713. Contrary to the State's assertion, the *Johnson* court never states that the firearm was concealed "within the robber's shirt" and therefore was not seen by the getaway driver. *Id*. In *Webber*, the evidence showed that before speeding away, the getaway driver waited for the robber as the robber ran toward the car with a knife in-hand and as the victim was "screaming he had been robbed." *See Webber*, 757 S.W.2d at 54–55. And in *Thompson*, the evidence showed that the getaway driver was outside the victim's place of business shortly before and after the robber fired his weapon, and the getaway driver was the individual who led the police to the firearm used in the robbery. *See Thompson*, 697 S.W.2d at 417. None of these cases necessarily reflect a complete absence of evidence related to the appellant's knowledge of the deadly weapon. Additionally, we note that *Johnson* and *Thompson* were decided before *Stephens*, and neither *Webber* nor *Thompson* involved the specific issue regarding party liability for the aggravating element presented

9

by appellant in this case.

The State argues that "there is a plethora of evidence for a rational trier of fact based on the circumstantial evidence and the reasonable inferences therefrom to find [a]ppellant was criminally responsible for . . . Tolbert's use or exhibition of a firearm during the offense." However, the State cites only to evidence showing appellant's participation in the robbery generally. Such evidence is insufficient to show appellant knew that a deadly weapon "would be, was being, or had been, used or exhibited during the offense." *See Anderson*, 2001 WL 1426676, at *1; *Kanneh*, 2001 WL 931629, at *2–3; *see also Stephens*, 717 S.W.2d at 340–41. "Although it would intuitively seem likely" that appellant knew of or saw Tolbert's gun before or after the robbery, "without at least circumstantial evidence to support it, such a conclusion cannot properly be based on speculation or assumption." *See Kanneh*, 2001 WL 931629, at *3.

Because we sustain appellant's second issue on this ground, we need not address his remaining arguments on appeal.

## CONCLUSION

Because appellant's conviction for aggravated robbery based on a theory of party liability is not supported by the evidence, and because neither party requested or received an instruction on any lesser-included offenses, we reverse the judgment of conviction and render a judgment of acquittal.

/s/ Sharon McCally
   Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.

Publish — TEX. R. APP. P. 47.2(b).