In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00104-CR**
_____

**NORMAN KENT ADAMS II, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-04-03885 CR**
_____

**MEMORANDUM OPINION**

After he was convicted by a jury on six counts of aggravated robbery, Norman Kent Adams II was sentenced to a term of forty years' imprisonment on each of the counts. Asserting the trial court committed reversible error, Adams raises six issues in his appeal from the judgments of conviction. After carefully reviewing Adams's arguments and the record, we conclude the trial court did not commit reversible error; therefore, we affirm his convictions.

1

Background

On the morning of September 22, 2010, three men held up a branch bank located inside a grocery store in Montgomery County, Texas. One of the men jumped over the counter and demanded that the teller open the safe. Another threatened the assistant manager with a gun while waiting for the teller to open the safe. The third stood near the pharmacy and pointed his gun at the grocery store's customers and employees who were near or in the pharmacy. When the teller was unable to open the safe, the men ran from the store and were seen driving away in a van.

A fourth man, Adams, was waiting for the van while seated in a running car, which had been parked a short distance from the location where the robbery occurred. When the van approached, its occupants jumped out, got into the waiting car with Adams, and were then seen speeding away.

An off-duty police officer, Rickey Cathey, was in his truck when he noticed a van's occupants exit and then jump into a waiting car. Officer Cathey called the Conroe police dispatcher; the dispatcher told Officer Cathey that a robbery had just been reported in a nearby grocery store. Although Officer Cathey followed the car onto the highway, he could not catch it. A number of other policemen became involved in the effort to stop the fleeing car; the chase ended when the car exited the freeway and wrecked in the median between two roads.

Several witnesses in the area reported seeing the occupants of the car run from the scene on foot. Police began searching the area; Deputy Chris Hoffmeyer, a sergeant with the constable's office who assisted in the search for the people who were seen fleeing the wrecked car, saw a man jump across the road he was on and then cross a fence. Deputy Hoffmeyer began chasing the man, who generally met the description of one of the men who had been seen fleeing from the wrecked car. After a short chase, Deputy Hoffmeyer threatened to shoot Adams with a taser and he surrendered. Another officer involved in the search, Detective Jason Waller, noticed another man crouched near the edge of the woods in the area being searched. Detective Waller detained that man, Charleston Meachum, until other officers arrived.

Over the course of the next three days, Adams gave four statements to police to explain why he was in the area and why he fled when Deputy Hoffmeyer tried to detain him. In Adams's last statement, which he gave police on September 25, 2010, Adams admitted that he was waiting for Meachum and the others in the car when the men were seen exiting the van, but he denied having driven the car after Meachum, Adams's brother, and two other men, who Adams said he did not know, got in the car. Also, in the last of his four statements, Adams explained that he and his brother came to Conroe and met with Meachum and three others at a house there. According to Adams, Meachum told them they were leaving to get some

3

money, and he saw the others get guns and leave. Adams agreed to sit and wait for them in the waiting car that was parked where he was told to wait. Adams explained that before he agreed to wait in the car, he knew Meachum and one of the others in the group had guns, and he knew they were going to "hit [] a lick." According to Adams, he thought his brother was the person driving the van when it approached the waiting car. Adams denied that he knew the others were going to rob a bank when they left the house, and he denied having been the driver of the getaway car.

In issues one and two, Adams asserts that the evidence is insufficient to support his six convictions under the law of parties to the aggravated robberies alleged in his indictment. Issue three contends the trial court erred by failing to submit an instruction on robbery, a lesser-included offense of aggravated robbery. In issue four, Adams argues the trial court erroneously admitted extraneous offense evidence that mentioned he had stolen cars. Issue five challenges the trial court's decision to deny his request for continuance to permit his attorney more time to secure a DNA expert. In issue six, Adams argues that the denial of his requested continuance denied his rights to due process and equal protection under the law.

## Sufficiency Issues

In issue one, Adams argues that without any evidence showing that he drove the getaway car, the evidence is insufficient to hold him responsible as a party to

4

the crimes that Meachum and his associates committed. The standards applied to reviewing a challenge to the sufficiency of evidence supporting a criminal conviction are settled. In a sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Under the *Jackson* standard, the reviewing court gives full deference to the fact-finder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* It is the fact-finder's responsibility to evaluate the credibility and demeanor of each of the witnesses, and the fact-finder's decision to determine the weight that should be given to the testimony of each of the witnesses who testify. *See Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997).

In Adams's case, the trial court charged the jury on the law of parties; the charge explained:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

5

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

*See* Tex. Penal Code Ann. § 7.02 (West 2011).

In the days following his arrest, Adams gave the police multiple statements regarding his involvement in the incident. In his first statement, given to police on the same day as the robbery, Adams denied that he had been involved in the robbery, that he had ever been inside the getaway car, and that he knew Meachum. Adams claimed that it was a coincidence that he was in the area where the getaway car wrecked, and he insisted that he was in another car that he had abandoned in the area.

In his second statement, taken shortly after the first, Adams admitted that he knew Meachum by his street name but denied that he knew the identities of any of the others seen where the car was wrecked. Adams stated that on the day before the robbery occurred, Meachum asked him to go with him and some others to Conroe to "hit 'em a lick." According to Adams, this meant that Meachum was going to "hit [him] a lick and fixin to get [him] some money." According to Adams, he told Meachum that he did not want to be involved; but, during the course of the second statement, when viewed in the light most favorable to the jury's verdict, Adams admitted for the first time that he was riding in the getaway car when it wrecked.

6

In his third statement, given to police two days after the robbery, Adams continued to deny having been involved in the robbery. In this statement, Adams reasserted his original claim that he was never in the getaway car, and returned to his claim that he was driving another car in the vicinity when he saw the getaway car wreck. Additionally, Adams denied that his brother participated in the robbery, and he denied that he had spoken to Meachum shortly before the robbery occurred.

Adams talked to police a fourth time three days after the robbery. In his fourth statement, Adams stated that on the morning the robbery occurred, he and his brother came to Conroe to meet Meachum. During the meeting, according to Adams, Meachum told him that they were going to get some money. In this statement, Adams acknowledged that he had seen the group leave Meachum's house carrying guns, and he acknowledged that he accompanied Meachum to a location where Meachum asked that he wait for them in the car (with its engine running) until they returned. Adams agreed. According to Adams, he understood that his role was to sit in the waiting car to save the others time.

During the course of his fourth statement, Adams explained that after waiting in the car, he saw the van approach. The men in the van, including his brother, jumped into the waiting car. Adams told police that Meachum drove the getaway car, that he was the front-seat passenger, and that his brother and the two others were in the back. As they were driving off in the car, Adams told police that

7

he noticed they were being followed. According to Adams, as Meachum was travelling down the highway at a high rate of speed, he asked Meachum to stop and let him out. Adams explained that shortly after exiting from the highway, the car wrecked; at that point, he and the others got out of the car and ran away. After jumping a fence and noticing he was alone, Adams surrendered to a police officer who was chasing him.

In his fourth and last statement to police, Adams acknowledged that after seeing the others with guns, he thought they were going to "do something for real." According to Adams, his last account of the events was "the truth," and that everything he told them earlier was false—he insisted that he was never promised any money to wait for the others in the car.

In his brief, Adams acknowledges that proving a defendant acted as a getaway driver is generally sufficient evidence to allow the jury to conclude that the getaway driver acted as a party to the primary offense. *See Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985), *overruled on other grounds by Ex parte Patterson*, 969 S.W.2d 16 (Tex. Crim. App. 1998); *Gerzin v. State*, 447 S.W.2d 925, 926 (Tex. Crim. App. 1969); *Webber v. State*, 757 S.W.2d 51, 55-56 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). In reviewing a defendant's sufficiency challenge when a conviction is based on the law of parties, we consider the events that occurred before, during, and after the offense to determine if

8

sufficient evidence ties the defendant to the primary offense. *See Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). Circumstantial evidence may allow the jury to infer that a defendant was a party. *See id.* However, "[t]here must be sufficient evidence of an understanding and common design to commit the offense." *Id.* (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (parenthetical citation omitted)). If the cumulative weight of all of the evidence is sufficient to support the defendant's conviction as a party, each fact need not point directly to the defendant's guilt. *Id.* "However, mere presence of a person at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense." *Id.* (citing *Thompson*, 697 S.W.2d at 417).

To reach its conclusions, a jury may draw reasonable inferences from the evidence admitted into evidence during a trial. *See Hooper*, 214 S.W.3d at 15. In this case, the evidence of Adams's involvement in the aggravated robbery is found mostly in the statements that he gave police. When viewed in the light most favorable to the verdict, the statements allowed the jury to infer that before the robbery, Adams met with Meachum and the others and that, shortly after meeting, three of those in the meeting entered and then robbed a bank inside a grocery store after having arranged for Adams to assist them to evade being arrested by helping them in their planned escape by using the nearby getaway car. Although Adams

denied knowing who the group intended to rob or that any members of the group would use the guns they had with them in committing a crime, his statements provided the jury sufficient circumstantial evidence to allow the jury to reasonably infer that Adams had sufficient information to know that the others would use the guns he had seen when they left to take money that was not theirs. *See Gross,* 380 S.W.3d at 186. The evidence allowed the jury to conclude that Adams, with knowledge of the group's plan, agreed to provide assistance by keeping the motor of the getaway car running in their planned escape and to reject his claim that he was merely present with respect to the crimes the others committed.

We hold that the four statements Adams gave to the police, when viewed in light of all of the cumulative evidence, allowed the jury to conclude, beyond a reasonable doubt, that Adams was a party to the six primary offenses, and the cumulative evidence allowed the jury to reasonably reject his claim that he was merely present when the others fled the scene and were later arrested. *See id.* Because the evidence sufficiently supports Adams's conviction as a party to the offenses at issue, we overrule issue one.

In issue two, Adams argues that the evidence was not sufficient to show that the guns used in the robbery were firearms or to prove that he knew that firearms would be used. Nevertheless, because "circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor[,] [c]ircumstantial evidence

alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 14-15 (citing *Guevara*, 152 S.W.3d at 49). Consequently, direct evidence proving that Adams knew that the others would use their guns during the robbery is not required if there is circumstantial evidence to support a reasonable inference that Adams could have reasonably expected others in the group to use their guns when committing the aggravated robberies at issue. *See id*. We further note that when faced with an argument which challenges the sufficiency of the evidence, we evaluate the evidence based on a hypothetically correct jury charge to determine whether the evidence proving the elements of the charged conduct is sufficient. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Under the law of parties, a defendant may be criminally responsible for another's conduct by (1) being a party to the offense under subsection 7.02(a), which means the defendant acted with the intent to promote or assist the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person to commit the offense; or (2) being a part of a conspiracy[1] to commit a felony under subsection 7.02(b).[2] Tex. Penal Code Ann. § 7.02.

---

[1]"Criminal Conspiracy" occurs when a person, with the intent to commit a felony, agrees with one or more persons, to engage in conduct that would constitute the offense and one or more of those persons performs an overt act in pursuance of the agreement. Tex. Penal Code Ann. § 15.02(a) (West 2011). An

In issue two, Adams argued that the State failed to prove the objects in the hands of the men robbing the bank, as seen in the surveillance videos from the grocery store, were firearms. The law provides that a defendant commits the crime of aggravated robbery by using or exhibiting a deadly weapon in committing the robbery. *Id.* § 29.03(2) (West 2011). A "deadly weapon" is defined by the Penal Code to include a firearm. *See id.* § 1.07(a)(17)(A) (West Supp. 2013).[3]

During the trial, the State proved that two loaded handguns were recovered inside the getaway car; a third handgun was found several feet from the car's front bumper. The surveillance videos from the robbery depict three men entering the grocery store and then using what appear be handguns to hold employees and

---

agreement constituting a conspiracy may be inferred from acts of the parties. *Id.* § 15.02(b) (West 2011).

[2]Section 7.02(b) states that:

[i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

Tex. Penal Code Ann. § 7.02(b) (West 2011).

[3]Although the Legislature amended the definitions section of the Penal Code after the commission of the alleged offenses, there were no changes to the definition of "deadly weapon." Therefore, we cite to the current version.

customers at bay while one of the men dealt with a bank teller in an effort to have her open the bank's safe. The bank teller, who was asked to open the bank's safe, testified that she felt threatened with imminent bodily injury or death by the man holding a handgun on her. The bank's assistant manager testified that the man who confronted him held a gun on him and threatened to "'put a cap in [him].'" Describing his thoughts, the assistant manager explained: "[Y]ou fear for your life." Two grocery store employees, who were confronted by a man in a hoodie, testified that the man had a gun and that they feared being seriously injured or killed. An employee of the store, in the pharmacy when the bank was being robbed, testified at the trial that she grew up around guns; she explained that the gun the man pointed at her during the robbery looked "real."

When viewed in the light most favorable to the verdict, the cumulative force of the direct and circumstantial evidence allowed the jury to reasonably conclude the objects in the hands of the men robbing the bank were firearms. To the extent Adams argues that the evidence did not show that firearms were used in the robbery, his issue is overruled.

Adams also argues in issue two that the evidence failed to show that before the others committed the robberies that he was aware they intended to use the firearms in the course of carrying out the crimes. Relying on *Wyatt v. State*, 367 S.W.3d 337, 341 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd, untimely

13

filed), Adams contends that the State must show that he is criminally responsible for committing the aggravating element before his convictions for the primary offenses can be upheld.

The evidence the trial court admitted in Adams's case allowed the jury to conclude that Adams saw other members of the group with guns shortly before the robbery occurred, and to conclude that he was aware they took guns with them when they left him to "hit [] a lick." Adams's attempt to flee from police after the armed robberies occurred while having been with the persons who committed the robbery before and immediately after the bank was robbed, coupled with Adams's knowledge that the group had guns, as well as evidence showing that he agreed to assist in the planned getaway, are all circumstances that cumulatively support the jury's inference that Adams could have reasonably foreseen that firearms would be used when the others committed the principal crimes at issue. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) ("We have recognized that a factfinder may draw an inference of guilt from the circumstance of flight."); *Graham v. State*, 566 S.W.2d 941, 951 (Tex. Crim. App. 1978) ("Attempts to conceal incriminating evidence and to elude officers can indicate knowledge of wrongful conduct."). Adams also gave police several statements denying knowledge of the robberies at issue, and he later admitted in his fourth statement that his prior statements were false. *See Ransom v. State*, 920 S.W.2d 288, 299

14

(Tex. Crim. App. 1996) (op. on reh'g) (explaining that any extraneous conduct which tends to show consciousness of guilt may be deemed relevant); *Ross v. State*, 154 S.W.3d 804, 812 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (noting that making false statements to police indicates a consciousness of guilt).

The case on which Adams, relies, *Wyatt*, is distinguishable on its facts. *Wyatt*, 367 S.W.3d at 341. In *Wyatt*, the appeals court reversed the getaway driver's conviction; in reversing, the appeals court noted that no evidence was before the jury to show that Wyatt, although a getaway driver who shared in the proceeds of the robbery, was aware that the person who committed the robbery ever had a gun or used or exhibited it when the robbery was committed. *Id.* at 341, 343. In Adams's case, the State introduced evidence that allowed the jury to conclude that Adams was aware that the men who committed the robbery had guns, both shortly before as well as after the robberies occurred.

We hold that the evidence the jury had before it in Adams's case was sufficient to allow the jury to infer that Adams should have anticipated that the guns he saw the others carrying would be used or exhibited when they committed the principal offenses. *See Hooper*, 214 S.W.3d at 15-16 (explaining that reasonable inferences are permitted "as long as each inference is supported by the evidence presented at trial"). Although Adams denied that he knew the others would use the guns he saw, and the jury could have chosen to believe him, it did

15

not. However, "it is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

In lending assistance to Meachum and the others by agreeing to help them get away after he knew they planned to commit a theft, and given his knowledge that they took guns with them and left to commit a crime, the jury could rationally find, beyond a reasonable doubt, that Adams was guilty as a party to the aggravated robberies that Meachum and the others committed. *See Hooper v. State*, 255 S.W.3d 262, 266 (Tex. App.—Waco 2008, pet. ref'd). Because the evidence sufficiently supports the jury's six verdicts holding Adams responsible as a party to the six aggravated robberies at issue, we overrule issue two.

## Lesser-Included Offense

In issue three, Adams argues the trial court erred in failing to provide the jury an instruction on the lesser-included offense of robbery. *Compare* Tex. Penal Code Ann. § 29.02 (West 2011) (defining the elements of the offense of robbery), *with id.* § 29.03 (West 2011) (defining the elements for the offense of aggravated robbery). In Adams's case, the difference between aggravated robbery and robbery concerns whether firearms were used or exhibited when the bank was robbed. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994) (holding that "if any

16

evidence exists in the record that would permit a rational jury to find that a deadly weapon was not used or exhibited, [the defendant] is entitled to an instruction on theft"). Here, because the charge included instructions on the law of parties, the evidence is reviewed on appeal in light of the law of parties to determine whether Adams was guilty of committing only the crime of robbery. *See Yzaguirre v. State*, 394 S.W.3d 526, 530-31 (Tex. Crim. App. 2013).

The State argues that Adams failed to preserve error because Adams failed to make the trial court aware that he wanted the charge to instruct the jury on the lesser-included offense of robbery. However, we do not agree with the State's claim that Adams failed to properly preserve his claim of charge error. When Adams complained about the charge, the trial court stated: "I don't think you're entitled to a lesser[-]included offense of robbery because there's no evidence that the crime was committed without guns." On this record, the trial court appears to have understood Adams's complaint about the charge to be that the charge did not contain an instruction on robbery, a lesser-included offense. We decline to hold that Adams waived his complaint that the charge did not instruct the jury on Adams's theory of robbery. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (explaining that to avoid waiver, the party must make a timely request that lets the judge know what is requested and why the party is entitled to it in a

17

manner that allows the judge to understand what is being requested of the trial court).

Therefore, we address Adams's claim that he was entitled to an instruction on the lesser-included offense of robbery. Determining whether a charge should have included instructions on a lesser-included offense involves a two-step analysis. *See Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). First, a trial court that is asked to include a charge on a lesser-included offense must determine "whether the lesser-included offense is included within the proof necessary to establish the offense charged." *Id*. at 68. Second, a trial court responding to a request to include a lesser-included offense in its charge determines if there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *See id*.

In reviewing the trial court's ruling denying a defendants request for instructions on a lesser-included offense, we consider all of the evidence presented at trial. *See Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). Whether the evidence is credible, whether it is controverted, or whether it conflicts with other evidence is not a consideration. *Id*. at 446-47. However, the fact that the jury may disbelieve crucial evidence about the offense that is submitted does not require that the lesser-included offense be submitted to the jury. *Skinner v. State*,

956 S.W.2d 532, 543 (Tex. Crim. App. 1997). Rather, to require an instruction on the lesser-included offense, the evidence before the jury must contain some evidence that is directly germane to the lesser-included offense. *See Goad*, 354 S.W.3d at 446 (citing *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003)). If there is more than a scintilla of evidence sufficient to make the lesser-included offense a valid, rational alternative to the charged offense, the trial court is required to include the requested instruction. *Id*.

The State does not argue that a robbery committed without a firearm is not a lesser-included offense of aggravated robbery. Instead, the State argues that the crime of robbery, on the facts before the jury and in light of Adams's conviction as a party, was not a valid rational alternative to the charged offense. *See Yzaguirre*, 394 S.W.3d at 530-31; *Sweed*, 351 S.W.3d at 68 (quoting *Segundo v. State*, 270 S.W.3d 79, 90-91 (Tex. Crim. App. 2008)). To show he was entitled to an instruction on robbery, the evidence before the jury must have been sufficient to permit the jury to determine that Adams was guilty of committing only a robbery by "more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012).

In this case, the evidence showed that an aggravated robbery occurred at the bank; there was no evidence that the firearms displayed by Adams's associates

19

during the robbery were not capable of causing serious bodily injury; nor was there any evidence that the firearms depicted in the robbery were merely props that were incapable of causing serious bodily injury or death. In light of the evidence admitted in Adams's trial, which shows that the participants in the bank robbery used firearms, and in reviewing the evidence in a case where the jury was given a charge that includes instructions on the law of parties, we hold that no rational jury would have concluded that Adams was a party only to a robbery. *See Yzaguirre*, 394 S.W.3d at 531. We conclude the trial court ruled properly in denying the request that Adams made to instruct the jury on robbery, and we overrule issue three. *Id*.

## Extraneous Crimes

In his fourth issue, Adams argues the trial court committed reversible error by admitting the portion of Adams's fourth statement where he told police that he had stolen cars and that he knew how to steal cars. Adams contends that the evidence indicating he had stolen cars or knew how to do so were matters that were not relevant to any fact of consequence in a trial over whether he committed aggravated robberies.

We review claims challenging the admission of extraneous offenses under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "As long as the trial court's ruling is within the 'zone of

20

reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* at 343-44 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). Generally, a trial court's ruling to admit evidence of an extraneous offense is within the zone of reasonable disagreement if the evidence is relevant to a material issue and if the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice. *Id.* at 344.

With numerous exceptions, evidence that a defendant has committed extraneous crimes is not admissible. *See* Tex. R. Evid. 404(b). Under Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible "'to prove the character of a person in order to show action in conformity therewith[.]'" *Berry v. State*, 233 S.W.3d 847, 858 (Tex. Crim. App. 2007) (quoting Tex. R. Evid. 404(b)). The evidence may be admissible, however, as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b); *see De La Paz*, 279 S.W.3d at 342-43; *see also Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001) (noting that a trial court has discretion to admit extraneous offense evidence to rebut a defensive theory raised in an opening statement); *Ransom*, 920 S.W.2d at 301 ("[E]xtraneous offenses are admissible to rebut defensive theories raised by the testimony of a State's witness during cross-examination."); *Halliburton v. State*, 528 S.W.2d 216, 219 (Tex. Crim. App. 1975)

21

(op. on reh'g) ("If the extraneous offense is relevant in tending to disprove the defensive theory, it should be admissible.").

Were we to conclude the trial court erred by admitting the portions of the interview at issue, we would then conduct a harm analysis to determine if Adams was harmed by the admission of the evidence. *See* Tex. R. App. P. 44.2(b). "The Rule 44.2(b) harm standard is whether the error in admitting the evidence 'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)).

On appeal, Adams's complaint concerns that portion of his statement where he mentions stealing cars and knowing how to steal them. According to the State, Adams gave the police three earlier statements that contain similar comments about stealing cars, and these three statements were all admitted without objection. The State argues that Adams waived his complaint about the admission of his fourth statement when his other statements were admitted and they all contain similar information indicating that Adams had a history of stealing cars.

Generally, when evidence of similar crimes is admitted without objection, a court may conclude that the admission of other similar evidence even though admitted over objection was harmless. *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998). "'It is well established that the improper admission of

22

evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged.'" *Id.* (quoting *Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978) ("declining to address admissibility of a psychiatrist's opinion after a psychologist had given similar opinion without objection") (parenthetical following *Crocker* provided by Texas Court of Criminal Appeals in *Leday*)).

In Adams's case, on the third day of trial, the trial court conducted a hearing to consider the objections Adams raised to the State's proffer of his fourth statement; during that hearing, Adams's objections concerned his statement to police that he had stolen cars and that he knew how to steal them. During the hearing, and outside the jury's presence, the trial court ruled that those portions of the statement were admissible. Later that afternoon, the State asked the trial court to admit the audiotape of Adams's fourth statement. When the trial court asked if Adams's attorney objected, counsel for Adams stated: "No objections, Your Honor." The record also shows that earlier that same day, when the State offered Adams's three other statements into evidence, Adams did not object to any of them on the grounds that they contained evidence showing that he stole cars or that he knew how to steal cars. Additionally, Adams's first three statements reflect that Adams told police he made money stealing vehicles.

Because similar evidence showing that Adams was a car thief was admitted without objection, we conclude the trial court did not abuse its discretion in admitting the portions of Adams's fourth statement at issue in his appeal. *See Leday*, 983 S.W.2d at 716-718 (noting that improper admission of evidence is harmless when other such evidence is admitted without objection). Additionally, by affirmatively stating he had no objection, and in light of his conduct of allowing his other statements with similar evidence to be admitted without objection, Adams waived his complaint about the admission of those portions of his fourth statement where he mentioned stealing cars or knowing how to steal them. *See Estrada v. State*, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010) (holding that although defendant objected to the admission of photographs during a pre-trial hearing, defendant waived any error in the admission of the photographs by affirmatively asserting that he had "'no objection'" when the photographs were offered during trial). Issue four is overruled.

## Motion for Continuance

In his fifth and sixth issues, Adams complains the trial court erred by denying his written motion for continuance. In his motion for continuance, Adams requested that he be allowed additional time to allow his "court approved DNA expert to review the State's DNA evidence." The motion for continuance was filed on January 27, 2012, three days before Adams's trial began.

24

The State filed a written response to Adams's request for more time, noting that counsel for Adams received the first set of DNA results in early August 2011. According to the State's response, when the prosecutor received the second set of DNA results on January 12, 2012, they were immediately forwarded to Adams's counsel. The State's response also noted that counsel for Adams had announced that Adams was ready when his case had been called for trial at docket call.[4]

On the morning before the trial began on January 30, 2012, Adams brought his motion for continuance to the trial court's attention. In denying the motion, the trial court noted that on January 20, 2012 it had granted Adams's request to appoint a consulting DNA expert based on Adam's counsel's representation that he did not want to retest the State's DNA results but needed an expert to "help explain [the results] to [him.]" The trial court indicated that it had authorized Adams to obtain a consulting DNA expert because Adams represented that doing so would not delay the trial. The trial court added that the current trial setting was the tenth time the case had been set, that Adams had been in custody 495 days, and that the court viewed the requested continuance as "a tactic to delay the trial further."

---

[4]The record on appeal does not show whether counsel for Adams announced ready when he appeared for the docket call that related to the January 2012 trial setting, but it appears the docket call occurred before the State received the additional test results on January 12, 2012.

On appeal, Adams argues that his trial counsel needed a DNA expert to educate his trial counsel regarding the State's DNA evidence and to fully investigate possible evidence tampering or contamination. Appellate counsel, who now represents Adams, claims that without a DNA expert, trial counsel's cross-examination of the State's DNA expert was "weak and feeble." According to appellate counsel for Adams, Adams was actually prejudiced because his trial counsel was unable to effectively cross-examine the State's witnesses on the DNA evidence. However, Adams has never disputed the State's claim that his attorney was aware for approximately six months before the date his trial began that DNA analysis would be involved in his case, nor does he dispute that his attorney first made his request for a DNA expert to the court ten days before the trial began. Instead, Adams suggested to the trial court that the State had provided him with what his trial attorney characterized as contradictory DNA results taken from the front and back seat air bags of the getaway car and that the results of these tests showed DNA mixtures were found on these surfaces that were consistent with several of the occupants of the getaway car.

To show that the denial of a pretrial motion for continuance constitutes error, the Court of Criminal Appeals has held that a defendant must demonstrate both that the trial court erred in denying the motion and that the lack of a continuance harmed him. *See Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010).

The Court of Criminal Appeals explained that in the defendant's motion for new trial, the defendant should allege facts tending to establish both error and harm. *See id.* However, Adams did not file a motion for new trial; consequently, we do not have a record that shows what information a DNA expert might have provided to Adams's attorney, nor can we determine how that information might have affected the outcome of Adams's trial. Additionally, the trial court could have accepted the State's representation that by August 2011, counsel for Adams was aware that the DNA evidence was available regarding his case, and that had Adams's attorney acted diligently, a request for an expert could have been made then. *See Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000) (holding that trial court did not abuse its discretion where defense counsel's request to appoint DNA expert was filed on the morning of trial where defendant "knew early on that this case involved blood/DNA analysis"). Moreover, Adams did not argue in the trial court that the information revealed in the DNA test reports received in January 2012 surprised anyone, nor has Adams argued on appeal that his attorney was surprised by these results.

The testimony at trial showed that the DNA samples from the driver's airbag in the getaway car were not definitive as to who was seated in the driver's seat; the DNA samples taken from the back seat airbags were also not definitive regarding who was seated in the back seats. According to the State's DNA expert, the

driver's airbag and the back seat airbags contained DNA mixtures of several individuals; Adams could not be excluded as having contributed to the mixtures on the driver's airbag and the left back seat's air bag. On cross-examination, the State's DNA expert agreed that, based on her DNA analysis, she could not tell who was driving the getaway car, and she explained that it was possible that DNA mixtures were on various items because various people touched the items or because the items were contaminated before reaching the lab.

The record does not support Adams's argument on appeal that his attorney was unable to effectively cross-examine the State's DNA expert regarding why mixed DNA results were found on the various items in the getaway car, nor does the record show that the test results he received approximately six months before trial did not contain any samples comprised of DNA mixtures. Importantly, in light of the date that Adams was on notice that DNA evidence would be used in his case, nothing in the record explains why trial counsel chose to wait until ten days before trial to ask the trial court to appoint a DNA expert to assist him in becoming educated regarding DNA analysis. Also, because Adams made no record of what information a DNA expert might have provided in his case, and in light of the fact that the State's DNA expert did not testify that Adams was the driver of the getaway car, the record is insufficient to demonstrate how another DNA expert might have impacted the results of Adams's trial.

28

Under the circumstances, and on the record before the trial court, whether the trial court should have granted Adams more time to obtain an expert than he actually had is a matter that was "'*particularly* within the discretion of the trial court.'" *Gonzales*, 304 S.W.3d at 844 (emphasis in opinion) (quoting 42 George E. Dix & Robert O. Dawson, *Texas Practice Series: Criminal Practice & Procedure* § 28.56 (2d ed. 2001)). The review of a trial court's decision deciding a motion for continuance utilizes an abuse of discretion standard. *See Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). To establish an abuse of discretion, a defendant must show he was actually prejudiced by the denial of his motion. *Id.* An abuse of discretion occurs "'only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had.'" *Gonzales*, 304 S.W.3d at 842 (quoting 42 George E. Dix at § 28.56).

Ordinarily, a defendant develops the evidence showing how he was harmed by the trial court's denial of a requested continuance during a hearing on a motion for new trial. *Id.* at 842-43. A defendant must show how an absent witness's testimony would have been material to preserve a claim alleging error in connection with a trial court's ruling denying a motion to continue. *Hubbard v. State*, 912 S.W.2d 842, 844 (Tex. App.—Houston [14th Dist.] 1995, no pet.). Adams did not file a motion for new trial, and we may not speculate about how

Adams might have been harmed by evidence that was never developed. *See Renteria v. State*, 206 S.W.3d 689, 702 (Tex. Crim. App. 2006). On the record before us, we conclude that Adams has failed to demonstrate that he was actually prejudiced by the trial court's decision to deny his request to continue the trial. *See Wright*, 28 S.W.3d at 532-33. Issue five is overruled.

In issue six, Adams argues he was denied his rights to due process and equal protection because he was effectively denied access to an expert to consult with his attorney about the State's DNA evidence. However, Adams never asserted due process or equal protection claims when asking the trial court to continue his case, and the trial court authorized his attorney to obtain an expert when he requested one.

Because Adams failed to object on due process or equal protection grounds at trial, the trial court was never given an opportunity to rule on his due process or equal protection arguments. The rights that Adams argues he lost do not fall within the small group of rights that are not required to be asserted and ruled on by the trial judge before they may be considered for the first time on appeal. *See Anderson v. State*, 301 S.W.3d 276, 278-81 (Tex. Crim. App. 2009) (concluding that no due process exception exists to the error preservation requirements as applied to requests for continuances to obtain a DNA expert); *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003) (explaining that the rules of error

preservation are not applied to certain rights, characterized as "waivable-only" or "[a]bsolute, systemic requirements"). Because the Rules of Appellate Procedure require Adams to demonstrate that he objected and obtained a ruling on his due process and equal protection claims, but he did not do so, we may not now consider his equal protection and due process arguments that he seeks to raise for the first time on appeal. *See* Tex. R. App. P. 33.1(a); *Anderson*, 301 S.W.3d at 280-81. Issue six is overruled.

Having overruled each of the issues Adams has raised in his appeal, we affirm the trial court's judgments.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 29, 2014
Opinion Delivered March 12, 2014
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

31