**MODIFY and AFFIRM; and Opinion Filed July 23, 2019.**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00444-CR

### CORTNEY WOODS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 7
Dallas County, Texas
Trial Court Cause No. F-1676149-Y**

## MEMORANDUM OPINION
Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Osborne

Appellant Cortney Woods was convicted of aggravated robbery and sentenced to thirty years imprisonment. Appellant raises four issues on appeal: 1) the jury charge was defective because the trial court failed to describe in that charge the conditions under which the jury could convict appellant based on the law of parties; 2) the trial court failed to require the jury to find that appellant used or knew that a co-defendant would use a deadly weapon; 3) the evidence was legally insufficient to establish that appellant participated as a principal or as a party; and 4) the evidence was legally insufficient to attribute use and/or exhibition of a deadly weapon to appellant. In a single cross-point, the State argues that the judgment should be reformed to correct three clerical errors. We modify the trial court's judgment in accord with the State's request and affirm that judgment as modified.

## Background

On August 2, 2016, Jackson McKinney, a Rowlett high school student and Marisa Carpenter, his girlfriend at the time, came to Dallas via DART rail. They had dinner with friends, then spent time walking around downtown Dallas and Deep Ellum until the early morning hours. Realizing that they had missed the last train to Rowlett, they continued walking around Deep Ellum looking for establishments that might be open until the next train to Rowlett was available.

Three men, later identified as Royneco "Neco" Harris, Edward,[1] and appellant approached and surrounded the couple. One of the men pointed a gun at McKinney; he said "Say something and I'll shoot." Another one of the men, who was standing next to McKinney, said "Give me everything you got." McKinney testified that he "froze" and was afraid he was going to be shot.

Before McKinney could react, he heard angry words behind him where Carpenter was with the third man. Carpenter took out her pepper spray and sprayed the third man standing next to her. She also sprayed pepper spray in the direction of the other two robbers. Carpenter testified that she did so because she felt that "our lives were threatened, and my things were going to get taken away from me." The men started screaming and ran off.

McKinney and Carpenter did not know where the robbers had gone. Because the batteries on their cellphones were either dead or had very little power, they ran to Baylor Hospital, thinking it would be a safe place. A security guard at the hospital called 911 on their behalf and Dallas patrol officer Gary Burch responded to the call. Burch interviewed McKinney and Carpenter and obtained descriptions of the three robbers. Burch then drove the couple back to the offense location in his patrol car and later dropped them off at a restaurant, Café Brazil, to wait until DART resumed morning service to Rowlett.

---

[1] Edward was identified only by this name at trial; no surname was given.

After accosting the young couple, Harris, Edward and appellant ran to a waiting car driven by Harris's girlfriend, Kristian Rios. Rios noticed that both Harris and Edward were carrying guns. Rios also noticed that Harris had pepper spray in his eyes while appellant had pepper spray on his neck. Rios drove the men away from the scene.

At Harris' direction, Rios stopped at a nearby 7-Eleven on Gaston Avenue. The men ran inside, got a container of milk, and poured milk in Harris' eyes and on appellant's neck in an attempt to alleviate the effects of the pepper spray. Rios followed the men into the store. Rios acknowledged that by this time she knew they had tried to rob the couple and had been pepper sprayed in that attempt. The four left the 7-Eleven without paying for the milk over the protests of the store clerk.

Harris instructed Rios to drive away from the store and then stop around the corner so the clerk would see the men leaving on foot. Rios complied. Harris, Edward and appellant ran around the corner of the store and got into her car. The clerk photographed the license plate on Rios's car as she drove away.

The police ultimately connected Harris, Edward, appellant and Rios to the robbery by use of the 7-Eleven surveillance videos, the photograph of Rios' license plate, and tips from Crime Stopper's which named appellant and one of the other men.

Dallas Police Detective Carlos Cardenas interviewed appellant; he "denied everything." Appellant did, however, identify himself from a photograph taken by the surveillance equipment at the 7-Eleven. Notations on that photograph state: "This is me," "I never said anything to anyone in the store, and "And I was not wippig [sic] mace off myself."[2] Cardenas testified that, in his opinion, appellant was not truthful during the interview.

---

[2] The terms "pepper spray" and "mace" were used interchangeably at trial.

## Jury Charge: Law of Parties

In his first issue, appellant claims that the trial court's charge to the jury failed to describe the conditions under which the jury could convict appellant based on the law of parties. He further claims that he was harmed by the trial court's failure to require the jury to find that he was "acting together" with his co-defendants. The State responds that the application paragraph of the jury charge properly authorized the jury to find appellant guilty of aggravated robbery either as a principal or as a party. We agree with the State.

### *The Jury Charge*

The jury was charged on the law of parties in the abstract portion of the charge as follows:

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person in the commission of the offense. Mere presence alone is not sufficient to render one a party to an offense.

These definitions of criminal responsibility are in accord with definitions of the law of parties provided by statute. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2).

The application paragraph of the charge applied the law of parties to the facts as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of August, 2016, in Dallas County, Texas, the defendant, CORTNEY WOODS, ***acting alone or as a party, as that term has been herein defined***, did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten and place Jackson McKinney, hereinafter called complainant, in fear of imminent bodily injury or death, and the defendant used or exhibited a deadly weapon, to-wit: a firearm, then you will find the defendant guilty of aggravated robbery, as charged in the indictment.

> Unless you so find and believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

Appellant did not object to this charge, nor did he request any specific, additional, or narrowing instructions.

### *Jury Charge Error*

In analyzing a claim of jury charge error, we must first determine if error exists. *See Almanza v. State*, 686 S.W.2d 157, 173–74 (Tex. Crim. App. 1985); *see also Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If it does not, our inquiry ends. *See Price*, 457 S.W.3d at 440. If, however, we find error in the charge, we next consider whether an objection to the charge was made and analyze the error for harm. *Id*.

Where, as here, appellant did not object to the charge, he is entitled to a reversal only if he suffered egregious harm as a result of the error. *Id*., *see also Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005); Tex. Code Crim. Proc. art. 36.19. "Egregious harm" is the type and degree of harm that affects the very basis of the case, deprives the defendant of a valuable right, or "vitally affects a defense theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). In making an egregious harm determination, the actual degree of harm must be assessed in light of the entire jury charge, the state of the evidence (including the contested issues and weight of probative evidence), the argument of counsel and any other relevant information reflected in the record of the trial as a whole. *Trejo v. State*, 280 S.W.3d 258, 261 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171).

### *The Law of Parties*

The law of parties authorizes a conviction for the collective conduct of two or more people. Under the law of parties, the State may enlarge a defendant's criminal responsibility to include acts in which he may not be the principal actor. *Boston v. State*, 373 S.W.3d 832, 837 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013). As noted above, the trial court

correctly set out the definition of the law of parties in the jury charge. TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2).

### Plata v. State is Distinguishable

Appellant relies on *Plata v. State*, 926 S.W.2d 300, 302-04 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997), to support his claim of jury charge error. In *Plata*, a prosecution for theft from an armored cash delivery vehicle, the jury charge which authorized conviction of both the defendant and his codefendant provided as follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 18th day of October, 1991, in Cameron County, Texas, the Defendants, Eloy Hinojosa and Luis Alberto Plata, did unlawfully approriate [sic] United States Currency without the effective consent of Felipe Landin, the owner, with intent to deprive the said owner of said property permanently, and that the value of such property was then and there twenty thousand dollars ($20,000.00) or more and under the value of one hundred thousand dollars ($100,000.00), then you will find the defendants guilty of theft as charged in the indictment.

> Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendants.

*Id*. at 303. That charge went on to define, in the abstract, the statutory conditions under which a person may be criminally responsible for another person's conduct as a party. *Id*.; *see also* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2).

The Court of Criminal Appeals held that this charge was erroneous because, while the definition of the law of parties was correct in the abstract, the application paragraph made no mention of the law of parties "either directly or by reference . . . for an offense committed by the conduct of his codefendant." *Plata*, 953 S.W.2d at 303-304. As a result, the application paragraph did not authorize the jury to either convict or acquit defendant Plata as a party to the offense. *Id*. That Court further found that defendant Plata was harmed because the evidence was insufficient to convict him as a principal. *Id*.

*Plata* is distinguishable from this case. In *Plata*, the application paragraph did not authorize conviction of defendant Plata as a party at all. By contrast, in this case the application paragraph of the court's charge expressly authorized the jury to convict appellant if it found from the evidence beyond a reasonable doubt that appellant, "acting alone or as a party as that term has been herein defined" committed the offense of aggravated robbery. And case law more recent than *Plata* clarifies that a general reference to the law of parties in the application paragraph of the jury charge is sufficient and is not error when the defendant, as appellant in this case, does not object or request a narrowing of the specific statutory modes of conduct that constitute party liability, *i.e.*, whether he "solicited, encouraged, directed, aided or attempted to aid" another specified person to commit the offense. *Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012).

*Analysis*

The trial court properly defined the law of parties in the abstract portion of the jury charge. The application paragraph, which followed the abstract definitions in the charge, properly described the conditions under which the jury could convict appellant of aggravated robbery, *i.e.,* acting either as a principal or as a party to the offense as the term party had been defined. The trial court did not err in failing to further instruct the jury that it must find that appellant was "acting together" with his codefendants during the commission of the offense in order to convict him as a party to the offense of aggravated robbery.

We conclude there is no error in the jury charge with respect to the instructions on the law of parties and appellant's potential culpability as a party to the offense of aggravated robbery. Consequently, we need not conduct a harm analysis. We overrule appellant's first issue.

**Jury Charge: Deadly Weapon**

In his second issue, appellant claims that the trial court's charge to the jury failed to require the jury to find that he used, or knew his codefendants would use, a deadly weapon during the

–7–

commission of the offense. The State responds that the jury charge authorized the jury to find that appellant, acting alone or as a party, used or exhibited a deadly weapon. We agree with the State.

The indictment charging appellant with the offense of aggravated robbery alleged that appellant "used and exhibited a deadly weapon, to wit: A FIREARM." In the jury charge the trial court defined "deadly weapon" in accord with the definition provided by statute: "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A). Because use and/or exhibition of a firearm was alleged as an element of the offense, in order to convict appellant of aggravated robbery the jury was required to find that appellant, acting alone or as a party, used or exhibited a "deadly weapon, to wit: a firearm." *See Young v. State,* 428 S.W.3d 172, 178 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (holding that, in order to find the defendant guilty of aggravated robbery under the law of parties, it was necessary for the jury to find that the defendant knew that one of his friends was going to use or exhibit a deadly weapon, i.e., a firearm, during the course of committing the robbery); *Rodriguez v. State*, 129 S.W.3d 551, 563 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (supp. op. on reh'g) (same).

There was no dispute at trial that a gun was utilized during the robbery of McKinney and Carpenter. The evidence showed that appellant, Harris, and Edward exited Rios' car together after they saw a young couple walking alone in an empty area of Deep Ellum in the middle of the night. Rios testified that Harris had "targeted" the couple. Harris, Edward, and appellant approached the couple and surrounded them. McKinney testified that one of the robbers pointed a gun at him and said: "Say something and I'll shoot." The gun was pointed at his chest. At some point during the encounter, he felt the gun touching his clothing. Both McKinney and Carpenter testified that the three men were acting together.

–8–

After Carpenter dispersed her pepper spray, Harris, Edward, and appellant fled the scene of the robbery together. When they got back into Rios' car, Rios noticed that both Harris and Edward had guns.

The fact that appellant did not personally have a gun does not relieve him of responsibility as a party for the use and/or exhibition of that weapon. The jury was authorized to convict appellant of aggravated robbery with a deadly weapon only if it found beyond a reasonable doubt that appellant acted with intent to promote or assist his cohorts in the commission of the offense by encouraging, aiding, or attempting to aid him in the aggravated robbery of McKinney and Carpenter with a deadly weapon. No greater specificity in the charge was required. See *Vasquez*, 389 S.W.3d at 368. We overrule appellant's second issue.

### Sufficiency of the Evidence: Participation in the Robbery

In his third issue, appellant challenges the sufficiency of the evidence to support his conviction. Specifically, he argues that the evidence is insufficient because 1) McKinney and Carpenter could not identify him as one of their robbers; 2) Rios, who was an accomplice witness, did not specify why she believed appellant actually participated in the robbery; 3) the surveillance video from the 7-Eleven indicated that appellant was not pepper sprayed in his face which suggests that he was not one of the active participants; and 4) Carpenter "described the non-active participant as not even paying attention to her while the robbery transpired." Appellant further argues that he was merely present at the robbery and there was insufficient corroboration of the accomplice witness testimony to convict him as a party to the offense. The State responds that the evidence is legally sufficient to prove appellant's active participation in the robbery and to corroborate the accomplice witness testimony. We agree with the State.

*Standard of Review*

A challenge to the sufficiency of the evidence is evaluated under the standards established in *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We review the evidence in the light most favorable to the verdict and determine whether a rational jury could have found all the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 894–95. This standard of review for legal sufficiency is the same for both direct and circumstantial evidence. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Burden v. State*, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001). Indeed, circumstantial evidence is considered as probative as direct evidence and is sufficient, standing alone, to establish a defendant's guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

We defer to the trier of fact's resolution of any conflicting inferences that are raised in the evidence and presume that the trier of fact, in this case the jury, resolved such conflicts in favor of the prosecution. *Jackson*, 443 U.S. at 318; *Brooks*, 323 S.W.3d at 894; *Sennett v. State*, 406 S.W.3d 661, 666 (Tex. App.—Eastland 2013, no pet.). We will uphold the verdict unless a rational factfinder must have had reasonable doubt with respect to any essential element of the offense. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. The State need not disprove all reasonable alternative hypotheses that are inconsistent with appellant's guilt. *Wise*, 364 S.W.3d at 903. Rather, we consider only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Hooper*, 214 S.W.3d at 13.

*Aggravated Robbery*

A person commits robbery if, in the course of committing theft,[3] and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a). A person commits aggravated robbery if he uses or exhibits a deadly weapon during the commission of a robbery. TEX. PENAL CODE ANN. § 29.03(a)(2). A firearm is a deadly weapon per se. TEX. PENAL CODE ANN. § 1.07(a)(17)(A).

*Law of Parties*

As noted above, a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(2).

Mere presence of a person at the scene of a crime either before, during or after the offense, or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). However, combined with other incriminating evidence, a defendant's presence may be sufficient to sustain a conviction. *Id*.

In reviewing the sufficiency of the evidence under the law of parties, we consider "events occurring before, during and after the commission of the offense" and may rely on actions of the defendant which show an understanding and common design to do the prohibited act. *Guevara*, 152 S.W.3d at 49. Each fact need not point directly and independently to the guilt of the defendant

---

[3] A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a).

as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. *Id*. Circumstantial evidence alone may be used to prove that a defendant is a party to an offense. *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).

***Kristian Rios' Testimony***

At trial, Rios testified that she, appellant, and Harris were friends and that she and Harris were dating at the time of the robbery. Rios did not know Edward, but she knew that Edward, Harris, and appellant were friends. On the day of the robbery, Rios and Harris were at Rios's mother's house when Edward called and asked Harris for a ride home. Rios borrowed her mother's car.

Rios, accompanied by Harris, picked up Edward and appellant in south Dallas. She was driving the men to Edward's apartment in Pleasant Grove through downtown Dallas near Deep Ellum when they saw a young couple, *i.e.*, McKinney and Carpenter, walking alone in a "pretty empty" area near the DART station. Rios testified that Harris "targeted" the couple. Harris told her to stop and Rios complied, though she did not stop her vehicle right by the couple. Harris, Edward and appellant exited the car.

Rios confirmed that she saw Harris, Edward and appellant approach the couple and that they were acting together. While Rios initially denied knowing what the men intended when they approached the couple, she testified that she knew they did not know the couple. Rios testified that when she looked back, she saw the trio "wrestling" or fighting with the couple.

After their exchange with the couple, Harris, Edward and appellant ran back to Rios' car. Harris had been pepper sprayed on his face and appellant had been sprayed on his neck. Rios noticed that both Harris and Edward were carrying guns. Harris told her to drive off.

As they passed a 7-Eleven, Harris told Rios to stop, which she did. Rios followed the men into the 7-Eleven. Rios also followed the men into the store's restroom where she saw that Edward

had a gallon of milk and was pouring milk on Harris' face and appellant's neck.[4] Harris was "screaming and stuff" because his eyes were burning and appellant was holding his neck. The four walked out of 7-Eleven as the clerk was saying they needed to pay for the milk; no one paid the clerk.

Edward told Rios to drive around the corner and pick them up. The men left on foot but ran around the corner of the store. As they got into her car, the clerk was taking pictures of the license plate.

After the men got into the car, Rios drove Edward and appellant to some apartments in Pleasant Grove where they left Rios' car. Harris stayed with Rios who then drove to her mother's house.

At trial, Rios identified several photographs of herself, Harris, Edward and appellant at the 7-Eleven. She testified that appellant was wearing a white tank top and blue shorts with his underwear/boxers showing at his waist while Harris was wearing a white shirt, which he pulled over his eyes to wipe off the mace.

Rios also identified a series of text messages between herself, Harris, appellant, and appellant's sister "TP." These texts included three messages Rios sent to appellant. The first two messages contain screenshots of Crime Stopper bulletins with pictures from the 7-Eleven surveillance video. The third message was a question from Rios to appellant: "Corntey (sic). . . Do you think all this is my fault[?]"

When asked what she meant by the question, Rios stated, "I mean, on Cortney's behalf, I feel like if I would never – if I would have never stopped at the 7-Eleven, because – just because [Harris] told me to stop at the 7-Eleven and [sic] [Harris's] behalf." She acknowledged that she

---

[4] Rios testified that she did not know that milk helped with pepper spray, but she guessed that Harris did as he was the one who told her to stop at the 7-Eleven.

–13–

felt somewhat responsible because she stopped at the 7-Eleven where they were captured on the surveillance camera and because she could have driven off when Harris initially told her to stop before the robbery. In yet another text message Rios sent to the group she urged them to stick together and pray for forgiveness.

Rios also identified two text messages she received from appellant, which he also sent to Harris and TP, two days after the robbery:

> If I ain't never told y'all none, just know I love y'all to death. No matter what goes on between us, whatever, y'all my family. Can't nobody ever take y'all place. My mistakes hurt y'all the most, but don't let it bring y'all down. I got me. I just want y'all to do everything in y'all power to stay out of the way and be safe in these streets. I don't know what to do at that moment, but I'ma (sic) be okay.
>
> *
>
> I put all y'all on this group thing because I wanted to tell all y'all at the same time IK (I know) we fucked up and it ain't no changing it, but don't let my mistakes bring y'all down, Cuz live y'all life stay out of the way. I'ma C y'all when I C y'all[.]

Rios explained that the four of them ultimately devised a plan in which Rios would tell the police, if questioned, that she sprayed Harris with pepper spray during an argument.

On cross-examination, Rios agreed that she never heard anyone discuss plans to commit the robbery and that she did not know a robbery was going to happen. She confirmed that Harris and Edward each had a weapon but appellant did not.

When asked if she knew that appellant, Harris and Edward were going to rob the couple when they jumped out of the car, Rios initially said that she did not know. Rios ultimately admitted, however, that she "knew what type of people they were," and "knew exactly what they were up to." She said it was "not a secret" what they were going to do. She agreed that it was apparent to her from the circumstances when she stopped the car that some type of criminal activity was going to take place. Rios testified that, by the time they got to the 7-Eleven, she knew that the men had tried to rob someone and been pepper sprayed in the process.

### *Rios as an Accomplice Witness*

In their briefs to this Court, both appellant and the State treat Rios as an accomplice witness. An accomplice is a person who participates in the offense before, during, or after its commission with the requisite mental state. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). Presence at the crime scene does not make a person an accomplice; rather, an accomplice must have engaged in some affirmative act that promotes the commission of the offense that the accused committed. *Id*.

As the "getaway" driver, Rios qualified as an accomplice witness in this case.[5] *See Brewer v. State*, 852 S.W.2d 643, 647 (Tex. App.—Dallas 1993, pet. ref'd) (stating "evidence that a defendant drove the getaway car after a robbery has been held sufficient to convict the driver as a party to the offense").

The trial court, however, did not instruct the jury that Rios was an accomplice as a matter of law.[6] Nor did the trial court instruct the jury to determine Rios' status as an accomplice as a fact issue.[7] Neither the State nor appellant requested either instruction. Appellant does not complain on appeal of the lack of such an instruction.

---

[5] Rios was facing charges for her role in the robbery. At the time of trial she had spent a year in jail and was on "house arrest" following her release. Rios and the prosecutor had discussed Rios' involvement in the offense and had reached an agreement whereby, in exchange for her testimony at trial against appellant, Harris and Edward, the prosecutor would agree to a probated sentence for her.

[6] A witness is an accomplice as a matter of law in the following situations:

1) If the witness has been charged with the same offense as the defendant or a lesser-included offense;

2) If the State charges a witness with the same offense as the defendant or a lesser-included of that offense, but dismisses the charges in exchange for the witness's testimony against the defendant; and

3) When the evidence is uncontradicted or so one-sided that no reasonable juror could conclude that the witness was not an accomplice.

*Ash v. State*, 533 S.W.3d 878, 886 (Tex. Crim. App. 2017).

[7] Case law generally holds that if the record contains evidence that a witness may have been an accomplice the issue should be submitted to the jury to decide if the witness was an accomplice as a matter of fact. *Ash*, 533 S.W.3d at 886.

*Sufficiency of Evidence to Corroborate Accomplice Testimony*

In addition to the general *Jackson v. Virginia* standard of review, we must review the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge, not by the jury charge actually given. *Gollihar v. State*, 46 S.W.3d 243, 252 (Tex. Crim. App. 2001); *Malik v. State*, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997). Here, a hypothetically correct jury charge would have included instructions on how the jury should evaluate Rios' testimony as an accomplice witness. Consequently, we evaluate Rios' testimony under the standard utilized for an accomplice witness.

*Corroboration of Accomplice Witness Testimony*

By statute in Texas, a conviction cannot be had upon the testimony of an accomplice unless that testimony is corroborated by other non-accomplice evidence tending to connect the defendant with the offense committed. *See* TEX. CODE. CRIM. PROC. art. 38.14. Corroboration is not sufficient if it merely shows the commission of the offense. *Id; see also Smith*, 332 S.W.3d at 439.

When reviewing the sufficiency of non-accomplice evidence under Article 38.14, we must decide whether the inculpatory evidence tends to connect the accused to the commission of the offense. *Id*. at 442. We judge the sufficiency of non-accomplice evidence according to the particular facts and circumstances of the case. *Id*. Either direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Id*. When there are conflicting views of the evidence, *i.e.*, one that tends to connect the accused to the offense and one that does not, we defer to the factfinder's resolution of the evidence. *Id*.

The non-accomplice evidence alone does not have to establish the defendant's guilt beyond a reasonable doubt, nor must it directly link him to the commission of the offense. *Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997); *Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.—

Dallas 2000, no pet.). The accomplice witness rule is satisfied if there is some non-accomplice evidence which tends to connect the accused to the commission of the offense alleged in the indictment. *Hernandez,* 939 S.W.2d at 178. Evidence that the defendant was in the company of the accomplice at or near the time or place of the crime is proper corroborating evidence, but such evidence alone is not conclusive corroboration. *Id*. There is sufficient corroboration if the combined force of all the non-accomplice evidence shows that rational jurors could have found that it sufficiently tended to connect the defendant to the offense. *Smith*, 332 S.W.3d at 442.

*Analysis*

Our review of the evidence leads us to conclude that a rational jury could have determined that appellant was one of the three men who exited Rios' car and, acting in concert with Harris and Edward, approached McKinney and Carpenter with the intent to rob the couple at gunpoint.

Appellant's identity as one of the robbers was established. As appellant correctly states in his brief to this Court, neither McKinney nor Carpenter identified him at trial as one of their robbers. However, Carpenter was able to describe the clothing the robbers wore: "The one on the left was the thinnest, and he had, I think, a blue jacket around his waist and, I believe, jeans. The middle guy had, I think, just like a white tank top, and then the other one had like a white t-shirt on." McKinney also described one of the robbers as having on a white tank top. Photographs and video from the 7-Eleven show that one of the three men entering the store was wearing a white tank top with blue shorts; his underwear was visible around his waist. Appellant, during his interview with Detective Cardenas, identified one of these photographs as being a photograph of him. This evidence corroborated Rios' testimony that photographs showing a man wearing a "white tank top, blue shorts, and I think that's actually his underwear showing" were photographs of appellant at the 7-Eleven after the robbery.

–17–

While neither Rios nor any other witness specified why appellant actually participated in the robbery, such testimony was not essential as motive is not an element of a criminal offense and need not be proved to establish the commission of an offense. *Bush v. State*, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982); *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972). Moreover, Rios' opinion as to why all three men were acting together and in concert was not relevant beyond the fact that they were acting together as parties to a robbery.

As appellant correctly states in his brief to this Court, there was no testimony that appellant was pepper sprayed in his face. However, Rios testified that appellant had pepper spray on his neck while Harris had pepper spray in his eyes. Carpenter testified that she pepper sprayed all three of the robbers because she believed that all three were a threat to her and McKinney. The video from the 7-Eleven shows that one of appellant's accomplices, identified as Harris, taking off his shirt and wiping his face. Appellant is seen on the surveillance video holding the back of his neck and wiping his neck with a cloth; this corroborates Rios' testimony that appellant had pepper spray on his neck. Appellant does not contest the evidence showing he is one of the three men on the 7-Eleven surveillance video using milk to alleviate the burning caused by the pepper spray. The fact that appellant was pepper sprayed, even though not in his face, is evidence that he was one of the robbers.

Appellant's claims that Carpenter described him as a "non-active participant" are not supported by the record. During her testimony, the prosecutor asked Carpenter to be "real clear" about the involvement of the three robbers.

Q. [BY THE PROSECUTOR] So the man standing next to you, what was he doing specifically?

A. The one standing next to me, he was just kind of staring me down.

Q. Did he say anything?

A. He wasn't saying anything. The only guy that said anything was the one with the gun.

\*

Q. And then what was the third man doing?

A. He was the bigger one, and I guess he was just kind of more like the back-up guy, just standing there.

Q. Okay. Was it clear to you that these three people knew each other?

A. Yes.

Q. Did they appear to be acting together?

A. Yes.

Q. How could you tell that?

A. The fact that they were just kind of like all in a crowd, like kind of a gang or something like that. Like that they were sitting there listening for people, and they must have been there for awhile. There weren't many people out that night.

Later, on cross-examination, defense counsel questioned the attention of the "third man" to the robbery:

Q. When you say he wasn't paying attention, what are you talking about?

A. He was kind of starring me down, like up and down, and wasn't paying attention to what was happening with Jackson.

Q. Why wouldn't he have reacted when you started to pull the mace out?

A. He wasn't looking at my hands when I was pulling it out. He was focusing on whatever.

Appellant relies on Carpenter's testimony in an effort to show that the evidence was insufficient to establish that all three robbers were acting together. He also argues that he was the "third" man "just standing there."

Contrary to those arguments, there was ample corroboration that appellant was working in concert with Harris and Edward to rob McKinney and Carpenter.

McKinney testified as to why he thought all three men were acting together when he first saw the men before they even approached him:

> Their pacing was even. They weren't looking at each other or communicating, but the way that they were walking just in that straight line, five steps behind each other, it definitely seemed like – it was just so evenly spread out, that I doubt that that would have been by coincidence at all. Because they would have at least walked in different parts of the sidewalk or not just been directly behind one another.

McKinney believed it would have been "a very hard coincidence" for one of the three men to just be standing there not participating in the robbery.

Carpenter testified that the three men came up and surrounded her and McKinney at the same time. Carpenter thought that the three men were all acting together. It looked to her like they were in a gang: "[t]he fact that they were just kind of like all in a crowd, like kind of a gang or something like that." Because all three appeared to be a threat to her, she pepper sprayed all three robbers.

Appellant fled the scene of the robbery with Harris and Edward, which shows consciousness of guilt. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (stating that a "factfinder may draw an inference of guilt from the circumstance of flight"); *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) (same). Surveillance video from the 7-Eleven shows the three men exiting Rios' car and entering the store together; Rios followed them inside. The video also shows appellant wiping his neck. Other videos show the men leaving the store together. These facts corroborate Rios' testimony that she drove the men away from the scene of the robbery, to a 7-Eleven, and later from the 7-Eleven. Appellant clearly did more than just "stand by" while his friends committed a robbery.

Based on a review of the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant was one of the

three robbers who approached and surrounded McKinney and Carpenter. We overrule appellant's third issue.

## Sufficiency of the Evidence: Deadly Weapon

In his fourth issue appellant claims that the evidence is insufficient to support the jury's verdict that appellant "knew that there would be use of a deadly weapon" during the robbery. The State responds that the evidence is sufficient to support the finding that appellant knew a deadly weapon would be, and was, used during the robbery. We agree with the State.

As noted above, the indictment charging appellant with aggravated robbery alleged that he "used and exhibited a deadly weapon, to wit: A FIREARM." The jury convicted appellant of "aggravated robbery as charged in the indictment."

A conviction for an aggravated offense must be supported by evidence that the defendant committed, or was criminally responsible for committing, the aggravating element. *Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986); *Wyatt v. State*, 367 S.W.3d 337, 341 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd, untimely filed). For a party to an offense to be liable for the use or exhibition of a deadly weapon as an element of aggravated robbery, there must be evidence that the defendant not only participated in the robbery before, while, or after a deadly weapon was displayed, but did so while being aware that the deadly weapon would be, was being, or had been used or exhibited during the offense. *Wyatt*; 367 S.W. 3d at 341-42; *see also Boston*, 373 S.W.3d at 839 n.7; *Williams v. State*, 05-14-00790-CR, 2016 WL 355115, at *7 (Tex. App.—Dallas Jan. 28, 2016, no pet.) (mem. op. not designated for publication). Our sufficiency review is not limited to evidence that the defendant knew in advance the deadly weapon would be used or exhibited during the robbery. *Mitchell v. State*, 05-17-01265-CR, 2018 WL 4858731, at *3 (Tex. App.—Dallas Oct. 8, 2018, pet. ref'd) (mem. op. not designated for publication) (citing *Boston*, 373 S.W.3d at 839 n.7).

–21–

Here, the jury could rationally have inferred that, since all three men were acting together when they approached McKinney and Carpenter, appellant knew a robbery was contemplated at the time he got out of Rios' car with his accomplices. The jury could also have inferred that, because Harris and Edward got back into Rios' car with guns after the robbery, they must have gotten out of her car with those same guns. Because appellant exited Rios' car with Harris and Edward, a rational jury could infer that appellant knew that both Harris and Edward were armed when they exited the car to rob the couple. It is, therefore, a reasonable inference that appellant knew Harris and/or Edward would use their guns during the commission of the robbery. *See Kirvin v. State*, No. 05-09-00382-CR, 2010 WL 3259798, at \*5 (Tex. App.—Dallas Aug. 16, 2010, pet. ref'd) (not designated for publication) (holding that, based on testimony that the defendant was the "inside contact" and participated in planning and carrying out the offense, the jury could infer that the defendant knew each person's role in the offense, including use of a firearm by an accomplice).

The evidence showed that the man standing in front of McKinney pointed a gun at McKinney's chest and threatened to shoot McKinney if McKinney said anything. This was witnessed by Carpenter. A rational jury could infer that appellant also heard his accomplice threaten to shoot McKinney and saw at least one of the guns pointed at McKinney when the threat was made. The evidence further showed that, after the gun was displayed to McKinney, appellant continued to play his part in the robbery by maintaining his position in surrounding the couple to ensure compliance with the demands for the couple's property. It is a reasonable inference that appellant knew a gun was being utilized during the robbery. *See Crutcher v. State*, 969 S.W.2d 543, 546-47 (Tex. App.—Texarkana 1998, pet. ref'd) (holding that a deadly weapon finding was appropriate where a defendant becomes aware during robbery that a deadly weapon was being used by an accomplice and the defendant continued to actively assist in the offense); *Shaw v. State*,

–22–

05-01-00876-CR, 2002 WL 959961, at \*3 (Tex. App.—Dallas May 10, 2002, no pet.) (not designated for publication)(same).

The evidence further showed that, after Carpenter pepper sprayed the robbers, all three men got into Rios' car together. Because Rios saw Harris and Edward with guns, it is a reasonable inference that appellant also saw those guns. Yet appellant fled the scene of the robbery with Harris, Edward, and the guns. It is a reasonable inference that appellant knew at least one gun had been utilized in the robbery at the time he fled the scene of the robbery. *See Escobar v. State*, 28 S.W.3d 767, 772–76 (Tex. App.—Corpus Christi 2000, pet. ref'd) (holding that evidence was sufficient to support a conviction for aggravated robbery when the defendant and his accomplices stole merchandise from a department store and one of the accomplices, who had left the store before the defendant and was sitting in the front seat of a parked car outside the store, pointed a gun at a store employee who followed the defendant, and the defendant, who could not have gotten into the car without seeing the gun, got into the backseat of the parked car and fled with his accomplices).

We conclude that the evidence is legally sufficient to support the jury's verdict that appellant used and/or exhibited a firearm as a party to the robbery. We overrule appellant's fourth issue.

### Modification of Judgment

In a cross-point, the State claims that the judgment should be modified to correct three technical errors. Specifically, the State asks this Court to modify the judgment to reflect that 1) the jury made a deadly weapon finding, 2) appellant entered a plea of "true" to the enhancement paragraph, and 3) the jury found the enhancement paragraph to be true.

*Deadly Weapon*

The indictment alleged that appellant "while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten and place JACKSON MCKINNEY in fear of imminent bodily injury and death, and the defendant used and exhibited a deadly weapon, to-wit: A FIREARM." The jury convicted appellant of "aggravated robbery as charged in the indictment." Therefore, the jury made an affirmative deadly weapon finding. *See Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985); *Roots v. State*, 419 S.W.3d 719, 724 (Tex. App.—Fort Worth 2013, pet. ref'd). The judgment, however, contains the entry "N/A" in the "Findings on Deadly Weapon" field.

We have the authority to modify an incorrect judgment when the evidence necessary to correct that judgment appears in the record. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).

Accordingly, we sustain the State's cross-point and modify the trial court's judgment to read "Yes, a Firearm" in the "Findings on Deadly Weapon" field of the judgment.

*Enhancement Paragraph*

The indictment contained the following enhancement paragraph:

And it is further presented in and to said Court that prior to the commission of the offense or offenses set out above, on the 14TH day of FEBRUARY, 2012, in cause number JD-76266-W in the 304TH JUDICIAL DISTRICT COURT of DALLAS County, Texas, a juvenile court, the defendant was adjudicated under Section 54.03, Family Code, to have engaged in delinquent conduct constituting the felony offense of CAPITAL MURDER, for which the defendant was committed to the Texas Juvenile Justice Department under Section 54.04, Family Code.

The record shows that appellant entered a plea of "true" to the enhancement allegation and the jury found that allegation to be true.

The judgment, however, incorrectly reflects "N/A" on "Plea to 1st Enhancement Paragraph" field and "N/A" on "Findings on 1st Enhancement Paragraph" field. Accordingly, we sustain the State's cross-point and modify the trial court's judgment to read "TRUE"" in the "Plea to 1st Enhancement Paragraph" field and also "TRUE" in the "Findings on 1st Enhancement Paragraph" field. TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27–28; *Asberry*, 813 S.W.2d at 529-30.

## Conclusion

As modified, we affirm the trial court's judgment.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

180444F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

CORTNEY WOODS, Appellant

No. 05-18-00444-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F-1676149-Y.
Opinion delivered by Justice Osborne.
Justices Schenck and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

add a deadly weapon finding,
reflect a plea of true and a finding of true to the enhancement paragraph.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 23rd day of July, 2019.