**REVERSE and REMAND and Opinion Filed June 15, 2021**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00108-CR

### TOREY LEWAYENE SHAMBURGER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1934438-R**

## MEMORANDUM OPINION

Before Justices Molberg, Goldstein, and Smith
Opinion by Justice Smith

Torey Lewayene Shamburger appeals his aggravated robbery with a deadly weapon conviction. A jury convicted appellant and sentenced him to sixty-five years' confinement. Appellant argues the evidence is legally insufficient to establish he participated in a robbery or that he used or knew a co-defendant would use a deadly weapon; the trial court failed to require the jury to find he was acting with others in order to establish party liability or that he used or knew a co-defendant would use a deadly weapon; and the trial court erred by instructing the jury that he was entitled to good conduct time. We reverse the trial court's judgment on punishment and remand for a new trial on that issue alone.

In August 2019, appellant was charged by indictment with aggravated robbery with a deadly weapon. At trial in January 2020, Michael Watts testified he was walking to a 7-Eleven near his house just after 11:30 p.m. on July 20, 2019 when he saw "three gentlemen" who had stopped to tie their shoes. Watts thought the men were "guys from the neighborhood," but as soon as he walked by, something hit him in the back of the head. When Watts turned around, there were "guns in [his] face," and the men said "we want your money." Watts described the men as "three black males" who were all wearing red bandanas. One of the men seemed significantly younger than the other two. Watts identified appellant as one of the men. The men tried to push Watts away from the road and hit Watts with their guns when Watts told the men to shoot him. There was "a little bit of a fight," and one of the men got behind Watts and ripped the pocket containing his wallet off his shorts. The men ran away, and Watts chased after them. One of the men turned around and shot at Watts with a small-caliber handgun. The men ran toward a parked car with dark windows that Watts had seen earlier driving "peculiarly slow." Watts saw the men getting in the car when the car's light came on; the men "got in quick and started the car and it started driving towards [Watts] really fast." Watts "ducked between the houses," and the car slowed down. Watts heard another shot that was "a louder shot from a higher caliber weapon," and the car drove away. Watts' cell phone was broken in the fight, but he made his way to the 7-Eleven where he called 911. When

–2–

police arrived, Watts assisted in searching the scene where he found his cell phone and a single shoe that did not belong to Watts.

Irving police officer Jonathan Towns testified he was dispatched to the scene and spoke to Watts, who described the suspects' vehicle as a dark blue or purple "PT Cruiser-type vehicle." Towns reported the description of the car, and he later went to assist in the traffic stop of a vehicle matching the description. Towns went to the scene of the traffic stop and observed the suspect vehicle, a Chevrolet HHR, similar in appearance to a PT Cruiser. Towns saw appellant taken into custody, and Towns searched the car looking for the "small caliber, chrome- or silver-colored revolver" Watts described seeing. Towns found a .22 caliber revolver under the driver's seat, and it appeared the gun had been placed there from the back seat.

Irving police officer E. Cloud testified he saw the suspect vehicle parked at a Raceway gas station, followed the vehicle when it drove away, and stopped the vehicle after it failed to signal a lane change. The driver of the vehicle was a heavy-set woman. Appellant was riding in the front passenger seat. After the traffic stop, Cloud returned to the Raceway to look for evidence. The State showed surveillance video of the front seat passenger discarding a small, dark object out the window while the suspect vehicle was parked at the Raceway. Cloud testified he found Watts' wallet and identification at the Raceway.

Irving police officer Eric Mosby testified he tested appellant's hands for gunshot residue and submitted the samples to a laboratory. Pursuant to a search

–3–

warrant, Mosby searched the suspect vehicle and found a Luger pistol inside the front passenger seat. Among other things, Mosby also found five Aguila .380 caliber bullets, a red bandana, a red scarf, a black bandana, and appellant's driver's license.

Nicole Palmer, a trace evidence examiner at Dallas County's Southwestern Institute of Forensic Sciences, testified she tested the samples taken from appellant's hands. The samples contained eight particles consistent with primer gunshot residue. Five particles were found on the sample from appellant's left hand, and three particles were found on his right hand.

Irving police detective Kevin Burkleo testified he investigated this case and determined that the driver of the HHR was appellant's girlfriend, Janice Allen, and the two males in the back seat of the vehicle were Allen's sons, one of them a minor. Appellant rode in the front passenger seat. Burkleo collected video from the 7-Eleven near the location of the scene of the offense. The video showed one of Allen's sons exiting the 7-Eleven prior to the offense and walking toward a car that looked "consistent with a Chevrolet HHR." Borkleo testified a shoe matching the shoe found at the scene of the offense was found in the back of the HHR; however, Borkleo could not determine who owned the shoes. At the conclusion of the evidence, the jury convicted appellant of aggravated robbery with a deadly weapon. This appeal followed.

In his first issue, appellant argues the evidence is legally insufficient to establish that he participated in a robbery either as a principal or a party. When

reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we defer to the jury's credibility and weight determinations. *See Jackson*, 443 U.S. at 326; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Our review includes both properly and improperly admitted evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.*

The elements of aggravated robbery, as relevant here, are that the defendant committed robbery and used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2). A person commits robbery, as relevant here, if he intentionally or knowingly threatens or places another in fear of imminent bodily danger or death in the course of committing theft and with intent to obtain or maintain control of the property. *See id.* § 29.02(a)(2). "In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission of, or in immediate flight

after the attempt or commission of theft. *Id.* § 29.01(1). And a person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. *Id.* § 31.03(a).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(2).

Mere presence of a person at the scene of a crime either before, during or after the offense, or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). However, combined with other incriminating evidence, a defendant's presence may be sufficient to sustain a conviction. *Id.*

In reviewing the sufficiency of the evidence under the law of parties, we consider "events occurring before, during and after the commission of the offense" and may rely on actions of the defendant which show an understanding and common design to do the prohibited act. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Each fact need not point directly and independently to the guilt of the defendant as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. *Id.* Circumstantial evidence alone may be used to prove

that a defendant is a party to an offense. *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).

Appellant argues the evidence is insufficient to show he participated in the robbery as a principal because (1) Watts' testimony that appellant might have been the person who fired the Luger at him and thus must have participated in the robbery required impermissible speculation and (2) proof of appellant's mere presence at the robbery or in his girlfriend's HHR was insufficient to show that he participated in the offense.

Watts testified he heard a shot from a higher caliber weapon as Allen's car drove away from the scene of the crime. Police recovered a Luger from the front passenger seat where appellant was sitting. Swabs from appellant's hands contained eight particles consistent with primer gunshot residue. From this evidence, the jury could have concluded appellant fired the Luger at Watts as Allen drove appellant away from the scene. Moreover, the evidence showed much more than appellant's mere presence at the scene of the robbery and in Allen's car. The evidence showed appellant and Allen's sons acted together in tying their shoes until Watts walked past them and then pointing guns at Watts, demanding money, beating Watts with guns, and pushing Watts before fleeing with Watts' wallet. Under these circumstances, we conclude the evidence is legally sufficient to show appellant committed aggravated robbery as a principal. *See Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899.

Regarding appellant's liability as a party to the offense, appellant concedes that surveillance video showed he threw Watts' wallet out the car window. Appellant also concedes that recent, unexplained possession of stolen property can demonstrate participation in a robbery, citing *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). However, appellant argues his possession of the wallet was not "unexplained" because the wallet was taken by one of the other two men, and the video only showed that appellant abandoned the wallet. Further, appellant argues the gunshot residue on his hands did not show that he assisted the persons who fired a gun but merely showed that he was a bystander. Appellant argues that, ultimately, party liability could not attach to appellant because there was insufficient proof the parties were "acting together."

As already discussed, the evidence showed appellant participated in the robbery by tying his shoes along with Allen's sons until Watts walked past and then remaining with Allen's sons as the men threatened and hit Watts with guns and took Watts' wallet. Appellant then fled to Allen's car with his accomplices and drove away with them. When appellant dropped the wallet out the car window, the jury could have concluded he was not merely "abandoning" the wallet but was getting rid of evidence of the aggravated robbery in which appellant had just participated. We conclude the evidence was legally sufficient to show appellant was guilty of aggravated robbery as a party. *See Guevara*, 152 S.W.3d at 49. We overrule appellant's first issue.

In his second issue, appellant argues the evidence is legally insufficient to show he used or knew that a co-defendant would use a deadly weapon. The indictment charging appellant with aggravated robbery alleged that he "used and exhibited a deadly weapon, to wit: A FIREARM." The jury convicted appellant of "aggravated robbery as charged in the indictment."

A conviction for an aggravated offense must be supported by evidence that the defendant committed, or was criminally responsible for committing, the aggravating element. *Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986); *Wyatt v. State*, 367 S.W.3d 337, 341 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd, untimely filed). For a party to an offense to be liable for the use or exhibition of a deadly weapon as an element of aggravated robbery, there must be evidence that the defendant not only participated in the robbery before, while, or after a deadly weapon was displayed, but did so while being aware that the deadly weapon would be, was being, or had been used or exhibited during the offense. *Wyatt*; 367 S.W. 3d at 341-42. Our sufficiency review is not limited to evidence that the defendant knew in advance the deadly weapon would be used or exhibited during the robbery. *Mitchell v. State*, 05-17-01265-CR, 2018 WL 4858731, at *3 (Tex. App.—Dallas Oct. 8, 2018, pet. ref'd) (mem. op. not designated for publication).

Here, the jury could rationally have inferred that, since all three men were acting together when they stopped and tied their shoes before hitting Watts as he walked by, appellant knew a robbery was contemplated at the time he got out of

–9–

Allen's car with Allen's two sons. The jury could also have inferred that, because the men got back into Allen's car with guns after the robbery, they must have gotten out of her car with those same guns. Even assuming appellant himself did not have a gun, because appellant exited Allen's car with Allen's two sons, a rational jury could infer that appellant knew that one or both Allen's sons were armed when they exited the car to rob Watts. It is, therefore, a reasonable inference that appellant knew one of Allen's sons would use their guns during the commission of the robbery.

The evidence showed that, after Watts walked by appellant and the other two men, Watts was struck in the back of the head. When Watts turned around, there were "guns in [his] face," and the men said "we want your money." The men tried to push Watts away from the road and hit Watts with their guns. A rational jury could infer that appellant also heard an accomplice demand Watts' money and saw at least one of the guns pointed at Watts when the demand was made. The evidence further showed that, after guns were displayed to Watts, appellant continued to play his part in the robbery by remaining at the scene as his accomplices hit Watts with their guns and pushed him away from the road. It is a reasonable inference that appellant knew a gun was being utilized during the robbery.

The evidence further showed that, after one of the men took Watts' wallet, appellant and Allen's sons all got back into Allen's car together. Because Watts saw guns, it is a reasonable inference that appellant also saw those guns. Yet appellant fled the scene of the robbery with Allen, Allen's sons, and the guns. It is a reasonable

inference that appellant knew at least one gun had been utilized in the robbery at the time he fled the scene of the robbery. We conclude that the evidence is legally sufficient to support the jury's verdict that appellant used and/or exhibited a firearm as a party to the robbery. We overrule appellant's second issue.

In his third issue, appellant argues he was harmed by the trial court's failure to require the jury to find that he was "acting together" with others in order to establish party liability. The jury was charged on the law of parties in the abstract portion of the charge as follows:

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Each party to an offense may be charged with commission of the offense.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

These definitions of criminal responsibility are in accord with definitions of the law of parties provided by statute. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2).

The application paragraph of the charge applied the law of parties to the facts as follows:

> Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt, that on or about 20TH day of July, 2019, in Dallas County, Texas, TOREY LEWAYENE SHAMBURGER, acting as either a principal or a party, did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place MICHAEL WATTS in fear of imminent

–11–

bodily injury or death, and the defendant used or exhibited a deadly weapon, to-wit: A FIREARM, then you will find the defendant Guilty of AGGRAVATED ROBBERY as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, then you will find the defendant not guilty.

Appellant did not object to this charge, nor did he request any specific, additional, or narrowing instructions.

In analyzing a claim of jury charge error, we must first determine if error exists. *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If it does not, our inquiry ends. *See id.*

The law of parties authorizes a conviction for the collective conduct of two or more people. Under the law of parties, the State may enlarge a defendant's criminal responsibility to include acts in which he may not be the principal actor. *Boston v. State*, 373 S.W.3d 832, 837 (Tex. App.—Austin 2012), aff'd, 410 S.W.3d 321 (Tex. Crim. App. 2013). As noted above, the trial court correctly set out the definition of the law of parties in the jury charge. TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2).

Appellant relies on *Plata v. State*, 926 S.W.2d 300, 302–04 (Tex. Crim. App. 1996), overruled on other grounds by *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997), to support his claim of jury charge error. However, *Plata* was a case involving an application paragraph that did not authorize conviction of defendant Plata as a party at all. *See id.* at 303–04. The application paragraph of the court's charge in this case expressly authorized the jury to convict appellant if it found from the evidence beyond a reasonable doubt that appellant, "acting as either a principal

–12–

or a party," committed the offense of aggravated robbery. And case law more recent than *Plata* clarifies that a general reference to the law of parties in the application paragraph of the jury charge is sufficient and is not error when the defendant does not object or request a narrowing of the specific statutory modes of conduct that constitute party liability, i.e., whether he "solicited, encouraged, directed, aided or attempted to aid" another specified person to commit the offense. *Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012).

Here, the trial court properly defined the law of parties in the abstract portion of the jury charge. The application paragraph, which followed the abstract definitions in the charge, properly described the conditions under which the jury could convict appellant of aggravated robbery acting either as a principal or as a party to the offense as the term party had been defined. The trial court did not err in failing to further instruct the jury that it had to find that appellant was "acting together" with his codefendants during the commission of the offense in order to convict him as a party to the offense of aggravated robbery. We overrule appellant's third issue.

In his fourth issue, appellant argues the trial court's charge to the jury failed to require the jury to find that he used, or knew his codefendants would use, a deadly weapon during the commission of the offense. As discussed previously, the indictment charging appellant with the offense of aggravated robbery alleged that appellant "used and exhibited a deadly weapon, to wit: A FIREARM." In the jury

–13–

charge, the trial court defined "deadly weapon" in accord with the definition provided by statute: "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. A firearm is a deadly weapon." *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A). Because use and/or exhibition of a firearm was alleged as an element of the offense, in order to convict appellant of aggravated robbery the jury was required to find that appellant, acting alone or as a party, used or exhibited a "deadly weapon, to wit: a firearm*." See Young v. State*, 428 S.W.3d 172, 178 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (holding that, in order to find the defendant guilty of aggravated robbery under the law of parties, it was necessary for the jury to find that the defendant knew that one of his friends was going to use or exhibit a deadly weapon, i.e., a firearm, during the course of committing the robbery)

There was no dispute at trial that a gun was used during the robbery of Watts. The evidence showed that appellant and Allen's sons were all three tying their shoes as Watts walked past, and Watts was struck in the head shortly thereafter. The men pointed guns in Watts' face and demanded money. One of the men tore Watts' shorts and took his wallet. After pushing Watts and hitting him with guns, appellant and Allen's sons fled to Allen's car and drove away, firing a shot at Watts as they left. The fact that appellant may not personally have had a gun does not relieve him of responsibility as a party for the use and/or exhibition of that weapon. The jury was

–14–

authorized to convict appellant of aggravated robbery with a deadly weapon only if it found beyond a reasonable doubt that appellant acted with intent to promote or assist his cohorts in the commission of the offense by encouraging, aiding, or attempting to aid them in the aggravated robbery of Watts with a deadly weapon. No greater specificity in the charge was required. *See Vasquez*, 389 S.W.3d at 368. We overrule appellant's fourth issue.

In his fifth issue, appellant argues the trial court erred by instructing the jury that appellant was entitled to good conduct time pursuant to article 37.07 of the code of criminal procedure. Specifically, appellant complains of the following portion of the jury charge at punishment:

> The length of time for which a defendant is imprisoned may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

> It is possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

> It cannot accurately be predicted how the parole law might be applied to this defendant if sentenced to a term of imprisonment, because the

–15–

application of that law will depend on decisions made by parole authorities.

You may consider the existence of the parole law. You are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

During the jury's deliberations, the jury sent out a note asking the following questions:

Where does any fine assessed go?

How is inmate able to earn during his sentence? If so how much?

How is he obligated to pay the fine after his release? i.e. during his parole?

The trial judge sent back a note informing the jury that they had "all the law and evidence" and directing them to continue their deliberations.

Appellant points out that, effective September 1, 2019[1], article 37.07, section 4(a) of the code of criminal procedure no longer refers to good conduct time. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 4(a). Instead, the current version of section 4(a) refers only to parole. *See id.*

We conclude that, under these circumstances, it was error to include the language concerning good conduct time in the charge. When we find error in the

---

[1] This change in law applies to a defendant sentenced for an offense on or after this effective date, regardless of when the offense was committed. Act of May 15, 2019, 86th Leg., R.S., ch. 260, § 2, sec. 37.07, 2019 Tex. Sess. Law Serv. 446, 448. Appellant was sentenced for the underlying offense on January 9, 2020.

charge, we next consider whether an objection to the charge was made and analyze the error for harm. *Price*, 457 S.W.3d at 440.

Where, as here, appellant did not object to the charge, he is entitled to a reversal only if he suffered egregious harm as a result of the error. *Id.*, *see also* TEX. CODE CRIM. PROC. art. 36.19. "Egregious harm" is the type and degree of harm that affects the very basis of the case, deprives the defendant of a valuable right, or "vitally affects a defense theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). In making an egregious harm determination, the actual degree of harm must be assessed in light of the entire jury charge, the state of the evidence (including the contested issues and weight of probative evidence), the argument of counsel and any other relevant information reflected in the record of the trial as a whole. *Trejo v. State*, 280 S.W.3d 258, 261 (Tex. Crim. App. 2009). Appellant argues he suffered egregious harm resulting from the trial court's erroneous instruction that he was entitled to good conduct time.

A panel of this Court has previously determined that an instruction concerning good conduct time given when the defendant was not entitled to good conduct time rendered a jury charge erroneous. *Navratil v. State*, No. 05-97-01404-CR, 2001 WL 92688, at *2 (Tex. App.—Dallas Feb. 5, 2001). The Court further concluded that the "absolute misstatement of the law" in that case compelled the Court to conclude that the defendant was egregiously harmed. *Id.* at *3.

–17–

Similarly, in this case, an absolute misstatement of the law concerning good conduct time occurred. *See id.* In addition, the record shows that, during voir dire, the prosecutor told the jury that, if someone is given a sentence, "they must serve one-half of that sentence before being eligible for parole." Thus, from the beginning of the prosecution, the State raised the issue of the impact of parole on appellant's sentence. During its deliberations, the jury sent out a note inquiring about appellant's payment of fines "during his parole," indicating the jury was focused on the way parole and, by extension, good conduct time might impact appellant. When there is a note from the jury regarding parole or good-conduct time, courts are more prone to find egregious harm. *Hooper v. State*, 255 S.W.3d 262, 272 (Tex. App.—Waco 2008, pet. ref'd); *see, e.g.*, *Villarreal v. State*, 205 S.W.3d 103, 107–10 (Tex. App.—Texarkana 2006, pet. dism'd) (trial court's failure to give mandatory parole instruction pursuant to article 37.07 resulted in egregious harm where it became apparent jury was concerned with application of parole law); *Rogers v. State*, 38 S.W.3d 725, 728–29 (Tex. App.—Texarkana 2001, pet. ref'd). After deliberating, the jury sentenced appellant to sixty-five years' confinement. Under the facts and circumstances of this case, we conclude the misstatement of the law concerning good conduct time was error and resulted in egregious harm to appellant. *See Trejo*, 280 S.W.3d at 261; *Navratil*, 2001 WL 92688, at *2–3; *Hooper*, 255 S.W.3d at 272. We sustain appellant's fifth issue.

We reverse the trial court's judgment on punishment and remand for a new trial on that issue alone.

/Craig Smith/
CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
200108F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TOREY LEWAYENE
SHAMBURGER, Appellant

No. 05-20-00108-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1934438-R.
Opinion delivered by Justice Smith.
Justices Molberg and Goldstein
participating.

Based on the Court's opinion of this date, the judgment of the trial court on punishment is **REVERSED** and the cause **REMANDED** for a new trial on that issue alone.

Judgment entered June 15, 2021